ISAAC LEVIN ET AL. *vs.* JACOB HURWITZ ET AL.

*Rescission of Agreement—Fraud—Delay and Acquiescence—
Accounting—Return of Consideration—Trust
ex Maleficio.*

In a proceeding to set aside a partnership agreement to carry on a dairy business, *held* that the evidence showed that plaintiff, entirely unacquainted with the business, was induced by misrepresentations to execute the agreement. p. 252

One who, upon discovering that a partnership contract into which he had entered was procured by fraud, failed promptly to seek to have it annulled, and subsequently signed an agreement recognizing the former contract, *held* to have lost the right of annulment by his delay and acquiescence. p. 253

Ratification of a contract does not deprive the injured party of redress for fraud in its inception.                                   p. 254

One who was induced by fraud to enter into a contract of partnership *held* to be entitled, on a dissolution of the partnership and an accounting, to a return of a part at least of the consideration paid by him for his share in the business to be carried on by the partnership.                                   p. 254

In a proceeding for relief on account of fraud in procuring plaintiff to convey property and to give his note to defendant for a share in his business, *held* that the property and note should be held by defendant as a trustee *ex maleficio,* pending proceedings by plaintiff for a dissolution of the partnership between them, and an accounting.                                   p. 255

*Decided April 30th, 1925.*

Appeal from the Circuit Court for Baltimore County, In Equity (PRESTON, J.).

Bill by Isaac Levin and Esther Levin, his wife, against Jacob Hurwitz and Dora Hurwitz, his wife. From a decree dismissing the bill, plaintiffs appeal. Remanded without affirmance or reversal.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Eldridge Hood Young,* with whom was *C. Gus Grason* on the brief, for the appellants.

*J. Howard Murray,* with whom were *Edward J. Colgan, Jr.,* and *Elmer R. Haile* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

This appeal is from a decree dismissing the bill of complaint of appellants to set aside a partnership agreement between Isaac Levin, one of appellants, and Jacob Hurwitz, one of appellees, and certain deeds of property in Baltimore City conveyed by appellants to appellees, for injunctions against alienation, and for general relief.

The suit is based upon fraud and misrepresentation alleged to have been practiced by Hurwitz for the purpose of inducing Levin to enter into said agreement. The fraud consisted in alleged misrepresentations as to the value of assets of Hurwitz, the amount of sales of milk, and the profits of Hurwitz from the business.

Hurwitz for a number of years had been engaged in farming and in the livestock business in Baltimore County. Levin for many years was employed in the printing business in Baltimore City, and at the date of the agreement was part owner of a printing establishment. He sold out his interest in this business in order to enter into business with Hurwitz, and agreed to pay him $20,000 for a one-half interest therein. Of this amount $11,895 was represented by properties in Baltimore City conveyed to defendants by Levin and wife, and $8,105 by a note from Levin and wife to defendants. The properties conveyed had been purchased by Levin from time to time and represented the savings of a lifetime. The agreement was that the families of the respective partners should live in one house. Levin was to look after the farming and the milk business, and Hurwitz was to attend to the buying and selling of live stock.

The agreement was signed on January 10th, 1924, and the Levins moved into the Hurwitz home about February 1st. Things did not turn out as Levin had expected, and on March 25th, 1924, Hurwitz and Levin signed an agreement purporting to be supplementary to the agreement of January 10th, by which it was arranged to sell at public auction on April 8th, 1924, the cows, horses, mules, dairy equipment and farming implements and machinery. The testimony is conflicting as to which of the partners suggested this sale. Each claims that it was made at the urgent insistence of the other. However that may be, the results were unsatisfactory, total sales being $8,311.40, and of the proceeds of sale there was left, after the payment of expenses, and of money borrowed to run the business, only a small balance, about $155 in cash and some sales notes. About two weeks after

the sale Levin left the farm and accepted employment in the Government Printing Office in Washington, leaving the assets of the concern in the hands of Hurwitz. These consisted of the small balance above mentioned, about 30 cows, 40 calves, 8 or 10 horses with colts, a milking machine, two separators and a mowing machine, the tenancy of two farms and the good will of the business.

It would be profitless to set out the testimony in detail. Much of it is conflicting. The record covers more than four hundred pages.

It is difficult, after a careful study of the whole record, to escape the conviction that advantage was taken by Hurwitz of the absolute ignorance of Levin of everything relative to Hurwitz's business, and that unwarranted representations were made by Hurwitz to induce Levin to part with his property.

One can hardly imagine a man of Hurwitz's shrewdness desiring Levin as a partner in the farming and livestock business, a man past middle age, who had never lived in the country or had any business experience except in a printing office. It is ludicrous to suppose that Hurwitz thought such a man could successfully manage a farm or a dairy business; and yet these, together with the bookkeeping, were, according to the agreement, the things he was expected to take charge of, while Hurwitz was travelling around buying and selling stock. Again it is difficult to understand why if, as he testified, he took Levin as a partner mainly because he wanted some one to look after that sort of work, in less than two months he was willing to close out every part of the business which the partner was to attend to, leaving nothing but Hurwitz's own specialty. Nor is it easy to believe that he, a stock expert, permitted himself to be overruled by one so uninformed as Levin in the matter of selecting the best time to sell, if the stock was to be disposed of. On the other hand, his course is entirely consistent with the theory that what he wanted was Levin's $20,000, of which he had collected $11,985.00 in property, besides Levin's note, and that

the sale of the stock, dairy equipment and farming implements was the easiest way to separate his partner from the business.

Apart from the circumstances, it is not clear from the direct testimony that the plaintiffs have sustained the burden of proving more than one of the alleged fraudulent representations.   As to some of these the testimony tending to support them is overbalanced by contradictory testimony; as to others the scales are so nearly evenly balanced that we would hesitate to reverse the finding of the chancellor as to them.

One thing seems quite clear even on Hurwitz's testimony. He led Levin to believe that milk could be shipped from their farm in Levin's name to Baltimore City through the official channels, amounting to $1,500 a month, as a regular business; and it is equally clear that Hurwitz knew from his past experience that could not be done.   The preponderance of testimony is that Levin knew a ban had been put by the Board of Health upon shipments in Hurwitz's name, but there is nothing to show that Levin was informed that Hurwitz had been warned that the business of buying and selling cows and the dairy business could not be conducted together on the same farm, or that he had been told that Hurwitz had already tried without success for any length of time shipping milk in the name of others.   But the partnership agreement provides for that very thing, and the principal work of Levin was to be looking after the dairy business.   It was from that source that a large, if not the larger, part of the profits was to come.

And yet in the six or seven weeks Levin was there before the agreement of March 25th was signed, so far as the record shows, not a step was taken by Hurwitz to start the business of which Levin was to be the manager.   It is quite obvious that Levin was as helpless as a child to make the arrangements, and, of course, Hurwitz knew it.

There is but one probable explanation of this inconsis-

tency, and that is that Hurwitz knew the arrangement could not be made.

We should have no hesitancy in saying that the relief prayed ought to have been granted, except for the fact that Levin failed to seek relief promptly when he discovered the fraud. According to his own testimony, he knew he had been deceived as to the other matters complained of as soon as he moved to the farm about the first of February; and he says he discovered what was the trouble with the milk business about the first of March. That was the time when he should have moved to have the contract annulled. But instead of doing that, on March 25th he signed another agreement with Hurwitz, in which the partnership agreement was expressly recognized. Without deciding that in every case the right to have a contract annulled is lost by delay and acquiescence, we feel that, on all the facts, this case cannot be taken out of the rule announced in such cases as *Foley v. Crow,* 37 Md. 51; *Latrobe v. Dietrick,* 114 Md. 8; *York Manufacturing Co. v. Hoblitzell Natl. Bank,* 118 Md. 505.

It does not follow, however, that plaintiffs are left without a remedy. Ratification of a contract does not deprive the injured party of redress for fraud practiced upon him in its inception. In this case we think there has been a failure of consideration by reason of the fraud.

It is manifest that there must be a dissolution of the partnership, and that this was inevitable from the beginning, or at any rate from the time of the agreement to sell the stock and implements. The contract was for a period of five years at least, and it was for an interest in a continuing business that the consideration of $20,000 was to be paid. Since that has become impracticable, in the accounting Levin will be entitled to a return of a part at least of the consideration. 30 *Cyc.* 686-688; *McCandless v. Crouse,* 220 Ill. 344.

The learned chancellor, from whose decree the appeal was taken, after seeing the witnesses and hearing all the testimony, summed up his views as follows:

"All things considered, taking into consideration all the

circumstances of the case, if I were an arbitrator in the matter of the parnership, I would award to Hurwitz the good will and stock business, all the stock, implements, vehicles, growing crops and all the personal property on the farm.

"I would give back to Levin his Baltimore property conveyed by deed, and return to him the eight thousand dollars promissory note on payment by Levin and wife of the sum of two thousand dollars. This suggestion of dissolution of the partnership is merely advisory and is not binding on the parties, but is only my view of the justice of the case."

We think it will be possible to do substantial justice in a dissolution and accounting.

We shall remand the case without affirming or reversing the decree appealed from, so that plaintiffs may have an opportunity to amend their bill and ask for a dissolution of the partnership and an accounting, and that in the accounting the premium paid by Levin for a half interest in the business may be charged to Hurwitz, and that in the meantime the property conveyed and assigned by Levin and wife to Hurwitz, and their promissory note to him, may be held by Hurwitz as trustee *ex maleficio*. Of course, Hurwitz will be entitled to credits for expenses properly incurred by him in connection with said property, and it may be that such loss as may be proved to have been suffered in the sale of April 8th should be considered.

> *Cause remanded without affirming or reversing the decree appealed from, in order that further proceedings may be had in accordance with the aforegoing opinion; the property conveyed and assigned by Levin and wife to Hurwitz and wife, and the promissory note above mentioned, to be held in the meantime by Hurwitz as trustee as indicated in the opinion, costs of this appeal to be equally divided between the parties in the accounting.*