## Mammoth Garage v. Taylor.

(Decided June 10, 1927.)

### Appeal from Bell Circuit Court.

1.  Attachment.—In action to enforce liens for unpaid purchase price of automobiles, where there was no ground for specific attachment under Civil Code of Practice, section 249, discharging general attachment was error, where defendant's evidence disclosed that he had no property in the state subject to execution.

2.  Insurance.—In seller's action to enforce liens for unpaid purchase price of automobiles, in which defendant by counterclaim sought recovery for seller's failure to keep automobiles insured, recovery for seller's alleged breach thereof was not authorized, where chattel mortgage did not require seller to keep them insured.

3.  Insurance.—Where chattel mortgage did not require seller of automobiles to insure them, to authorize recovery for seller's failure so to insure, it was incumbent on buyer to allege and prove that seller's agreement to insure was by fraud or mistake left out of contract.

4.  Trial.—In action to enforce liens for price of automobiles, instruction that, if plaintiff and another, at time of making of sales contract, were partners trading under fictitious name, to find for de-

fendant, was error, where evidence showed that at time of sale
plaintiff was sole owner of garage business.

5.  Names.—Ky. Stats., section 199b-1, requiring one doing business
    under fictitious name to file certificate, is penal in nature, and does
    not make contracts of such person unlawful unless certificate is
    filed.

JAMES M. GILBERT for appellant.

N. R. PATTERSON for appellee.

Opinion of the Court by Turner, Commissioner—
Reversing.

In February and March, 1924, appellant, Webb,
doing business as the Mammoth Garage, sold and deliv-
ered to appellee two automobiles, one in each of those
months.

A cash payment was made upon each of them at the
time, and a chattel mortgage executed setting forth the
terms of sale, the time and amount of payment of the de-
ferred installments, together with the undertaking by the
purchaser to keep the two motor vehicles insured against
fire and theft for not less than the total of the unpaid in-
stallments, and with a provision precipitating the due
date of all installments if any one of them was not paid
at the time fixed. In each instance the estimated cost of
insurance was embraced in the purchase price.

In the fall of 1924 this ordinary action was filed seek-
ing to enforce a lien for the unpaid purchase price, being
a balance in one case of $233.50, and in the other of
$273.12.

An answer and counterclaim was filed, admitting the
amount of the unpaid purchase price in each instance,
and alleging as to one of the motorcars that it was prac-
tically destroyed by fire of unknown origin while in de-
fendant's possession, and "that he thereupon carried
said automobile to plaintiff's place of business and left
same there with the plaintiff, and requested the plaintiff
to collect and distribute the fire insurance thereon." He
then alleges that it was provided in the contract that de-
fendant should keep the motor vehicle insured against
fire for enough to pay the balance of the purchase price,
and that at the time of the making of the contract he paid
plaintiff enough money for that purpose, and plaintiff
agreed to pay for said fire insurance, and agreed that the
insurance would be maintained and kept up by plaintiff,

and asked that the plaintiff be required to disclose whether he had effected such insurance and whether he had collected same.

As to the other automobile, it is alleged that defendant had wrongfully and without right procured and had served upon defendant an order of attachment, wherein he sought to specifically enforce a lien thereon, and that accordingly said motorcar was taken from defendant, and defendant deprived of the use thereof, and placed in the garage of one Hoskins, and he prays the cause be transferred to the equity docket, for a disclosure as to the insurance, and that he recover of the defendant damages for the wrongful taking of the second car.

A demurrer to the answer and counterclaim was filed, which, so far as this record shows, was never acted upon; but on January 21, 1925, an order was entered reciting, "The answer and counterclaim having been stricken, the defendant is given time to amend."

About that time J. G. Hoskins filed his petition to be made a party asserting a claim and lien against one of the cars for repairs, etc., placed thereon and asking that the same be sold. At the time the answer and counterclaim was filed, defendant also entered a motion to discharge the attachment.

Plaintiff filed an amended petition, alleging that the motorcar damaged by fire was delivered to him by the defendant, and that he was holding possession of the same by virtue of the terms of the chattel mortgage, and that same is not worth more than the amount of his lien thereon, and that the other car was being held by James Hoskins for a debt against the same for repairs, and that that car is worth less than the amount of the liens held against it.

A judgment of sale was entered as to each of the cars, but the record does not disclose that it was ever executed.

During the trial, defendant filed an amended answer, asserting only that plaintiff, while doing business as the Mammoth Garage, was a partnership composed of R. S. Webb and Ralph Farmer, and that such partnership, while doing business under that trade-name, had not complied with the statute, and had not filed in the office of the clerk of the county court their statement or certificate stating the name of the partnership or the full names of

the partners, and that, because of their failure so to do, they had no right to maintain this action.

On the trial, the jury returned a verdict for plaintiff for the amounts of the uncontroverted liens on each of the motorcars, and then found on the counterclaim a verdict for defendant in the sum of $500.00, and, a judgment having been entered on this verdict, the plaintiff has appealed. The court also in its judgment discharged the plaintiff's attachment.

In the original petition, grounds for a specific attachment under section 249, Civil Code, were stated, and the indorsement on the petition shows the issual of an attachment. Then in an amendment the plaintiff stated grounds for a general attachment, and the indorsement on that pleading shows an attachment was issued. Neither of those attachments is in the transcript before us, and there is nothing to show under which, if either of them, the motorcars were levied upon.

Treating the grounds of attachment in both pleadings as controverted under the terms of an agreed order entered at the trial, which is by no means specific, it may be said that the evidence does not sustain the grounds for specific attachment under the provisions of section 249; but the evidence does sustain the grounds for a general attachment which was issued on the amendment. We assume from the terms of the judgment that all attachments on the property were discharged, and obviously this was error so far as the general attachment is concerned. The evidence of defendant himself discloses that he is a housekeeper with a family, and that he has no real estate, and that his assets consist of notes aggregating only $700.00 in addition to the two machines. The ground of general attachment asserted was that defendant had no property in this state subject to execution, and obviously the defendant's own evidence tended to establish that ground, and it should not therefore have been discharged.

The mortgage which constitutes the contract between the parties does not by its terms impose the duty upon the plaintiff to keep the mortgaged cars insured or to insure them at all, although it does disclose on its face that the estimated cost of insurance was embraced in the purchase price. That instrument provides on its face that its provisions constitute the entire contract between

the parties, and, while defendant alleges in his pleading that the plaintiff agreed and undertook to effectuate and keep in force insurance upon the two motorcars, it does not allege that such agreement or undertaking by the plaintiff was by fraud or mistake left out of the written contract. That pleading, therefore, did not authorize the giving of the second instruction under which defendant recovered a verdict for $500.00 under the allegation of his counterclaim.

The action was based upon a written contract which presumably contained, as it recites, the whole agreement between the parties as to the subject-matter, and the defendant's counterclaim rests upon an allegation with reference to the same transaction as to an alleged undertaking by the plaintiff which is not embraced within the terms of the written contract. To maintain the allegations of his counterclaim, he must allege that the thing he relies upon was by fraud or mistake left out of the written contract. It results that the court erred in giving instruction No. 2, under which the recovery was had on the counterclaim.

In a third instruction the court, in substance, said to the jury that, if the plaintiff Webb and one Ralph Farmer were at the time of the making of the contract partners trading under the firm name of Mammoth Garage, then they should find for defendant. There was no evidence upon which to base such an instruction. The evidence shows without contradiction that at the time of the contract Webb was the sole owner of the Mammoth Garage, and that when thereafter Farmer bought an interest in it he bought no interest in this claim.

Defendant in a pleading relied upon the alleged failure of the plaintiff to file the statement required by section 199b-1, Ky. Stats., as a reason why he could not maintain this action; he at the time doing business under an assumed or fictitious name. That statute is by its terms a penal one, and not intended to affect the validity of contracts; and the court therefore properly declined an instruction based upon that statute. Hayes v. Providence Citizens' Bank & Trust Co., 218 Ky. 128, 290 S. W. 1028; Williams v. Dearborn Truck Co., 218 Ky. 271, 291 S. W. 388.

There are several questions of practice discussed in the briefs which we will not consider, for the record in this court is in such a confused and uncertain state that

we cannot intelligently discuss them. Not only is it doubtful whether all the record is copied, but it is even doubtful whether the defendant has any pleading whatsoever in the record. One of his pleadings is recited in an order to have been stricken from the record, and whether that is the answer and counterclaim copied herein we cannot tell; consequently, no questions are passed upon except those herein specifically mentioned.

Upon the return of the case, either party will be permitted to amend his pleadings and clarify the issues.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.