# FRIEDMAN ET AL. *v.* McLANE
[No. 15, October Term, 1949.]

*Decided November 10, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Joseph Loeffler,* with whom was *Harry E. Goertz* on the brief, for appellants.

*Nathan Patz,* with whom were *James K. Cullen* and *Frank, Skeen & Oppenheimer* on the brief, for appellee.

GRASON, J. delivered the opinion of the Court.

William A. Harting filed a bill of complaint in the Circuit Court No. 2 of Baltimore City against Francis

J. McLane, trading as The Walnut Grove, in which he prayed that receivers be appointed to take charge of all the property of McLane. The court, on May 19, 1947, appointed Messrs. Webster C. Tall and James K. Cullen, Receivers. Harting was a judgment creditor. McLane was heavily indebted. He owned property situate in Brooklyn and its environs, subject to three mortgages; the first mortgage, given to secure the sum of $90,000, was held by the Annapolis Banking and Trust Company. In addition to these mortgage debts, he had a number of judgment and lien creditors, as well as general creditors. Mr. Nathan Patz was counsel for the receivers. In the situation the counsel for the mortgagees and judgment creditors held frequent meetings and conferences with the receivers and their counsel and conferred with the court as to the best thing to be done for the benefit of the creditors. It was decided that a part of the mortgaged premises referred to be sold under the power contained in the mortgage held by the Annapolis Banking and Trust Company. The other mortgagees and judgment creditors waived their liens on the property to be sold under the first mortgage so that the purchaser at the sale could get a clear and unencumbered title. As a result of these conferences of the creditors and lienholders with the receivers, their counsel and the court, the receivers, on the 21st day of April, 1948, filed a petition in which, among other things, they averred:

"That your petitioners therefore have authorized, subject to the formal approval thereof by this Court, the foreclosure of the first mortgages upon such real estate, so that the proceeds resulting in such foreclosure cases will be, after payment of the expenses therein and the satisfaction of the respective mortgage claims thereout, and after payment of the necessary judgment claims entitled to priorities, delivered to your Receivers for distribution in this proceeding subject to the further order of the Court herein."

The first mortgagee filed a written consent "to the terms of the aforegoing petition in respect of such autho-

rized foreclosure of such mortgages". Upon this petition and consent the court passed the following order: "Upon the aforegoing petition and concurrence it is this 21st day of April, 1948, ordered, by the Circuit Court No. 2 of Baltimore City that in accordance with the aforegoing petition the holder of the first mortgages upon the real estate belonging to this receivership, The Annapolis Banking and Trust Company, a banking corporation, be and it is hereby formally authorized and empowered to proceed to a sale in foreclosure proceedings based upon its aforementioned first mortgages of the real property described in such mortgages, upon the understanding and arrangement set forth in the aforegoing petition, as a result of which the Trustees in such foreclosure case or cases will, after payment of the expenses in such case or cases and after satisfaction of the first mortgage claims and such other liens as are entitled to priority therein be paid over and deliver to the Receivers herein to be held by them subject to the further order of this Court in this case for distribution in such manner as may hereinafter be authorized and directed."

Following this order a proceeding was instituted in the Circuit Court No. 2 of Baltimore City to foreclose the first mortgage on property owned by McLane. James K. Cullen and Nathan Patz were appointed trustees by the court to sell the mortgaged property. It was advertised by a plat which showed the property here concerned as lot "A". The buildings on this lot comprised its entire area. They delineated the lot. Running from the southwesternmost end of the building to Potee Street, in a westerly direction, is a right of way fifteen feet wide. By the advertisement the purchaser will have the use of this right of way in common. There is a small piece of land to the east of and immediately adjoining this right of way, which was used as an addition thereto but is not embraced in the area of lot "A". There is also a small strip of land running along the south side of the property sold to a small passageway in the rear of the stores fronting on Hanover Street, which was

not included in lot "A" or the mortgage. These stores were included in lot "A" and embraced in the description in the mortgage. There was a piece of land a little over twenty-six feet long and five and a half feet wide to the southwest end of the property sold, but was not covered by the advertisement or the mortgage.

An examination of the title by the Maryland Title Guarantee Company disclosed that the mortgage from McLane to the Annapolis Banking and Trust Company did not include a room eighty-seven feet seven and one-quarter inches long and eleven feet eight inches wide, which was added to the real wall of the building by Mc-Lane after the execution of the mortgage. Opening from the rear wall of this addition are two doors, and there is a fire escape from the top thereof, which projects about five feet to the rear. This additional room, not covered by the mortgage, was included in the plat as part of the property to be sold under the mortgage foreclosure proceeding. The purchaser at the sale (and the substituted purchasers) claims a five foot strip of land in fee simple running from the northernmost end of the additional room to the fifteen foot right of way which runs to Potee Street. It was also disclosed by the title search that the ownership of about thirty feet of the fifteen foot right of way, running easterly from Potee Street, was in the Mayor and City Council of Baltimore. It further developed that McLane married subsequent to the execution of the mortgage, and his wife, Iva Mae McLane, has an inchoate right of dower in the property now held by the receivers.

The sale made by the trustees was reported to the court on May 26, 1948. The exceptions to the ratification of the sale were not filed until November 12, 1948. In the meantime there were numerous conferences between the Title Company, counsel for the exceptants, the trustees, and the receivers for the purpose of perfecting any infirmity in the title to the property. The testimony tends to show, and the court found as a fact, that it was agreed that a petition be filed in the receivership

case authorizing the receivers to join in a deed with the trustees to the end that the purchaser at the mortgage sale would receive a good title to the property purchased by him; also that a deed be given by the Mayor and City Council, relinquishing title in the thirty foot strip of the fifteen foot right of way leading from Potee Street to the property sold. It was agreed by Mr. Jira, representing the Title Company, that Mrs. McLane's claim for inchoate right of dower in the property held by the receivers be held for future determination by the court in the receivership proceeding, and her solicitor has stated that she is ready and willing to join in a deed relinquishing her claim to either the receivers or the purchaser at the mortgage sale.

An order was passed in the receivership case on August 13, 1948, by the court authorizing the receivers to join in a deed with the trustees and to convey that portion of the property which was sold at the mortgage sale (which portion at that time was vested in the receivers) to the purchaser; together with a right of way extending from the west wall of the room which was added to the building by McLane after the mortgage was executed, running from northwest end of said wall, with a uniform width of fifteen feet, to the right of way leading to Potee Street, with the use thereof in common with the other properties abutting thereon to the west. The receivers state that they will join in a deed to the purchaser at the mortgage sale to those small pieces of property, not covered by the mortgage or the plat by which it was sold, but which fringe the property sold.

It might be noted in passing that Jacob L. Friedman, agent, the purchaser, filed a petition on September 1, 1948, asking that he, together with other persons named in the petition, be substituted as purchasers, and prayed the court by its order to confirm and ratify said sale to the persons named therein. The court passed an order on that date authorizing the substitution of the persons named therein for Friedman, agent, and authorizing the trustees "to convey said property, as reported by

said Report of Sale directly to the said substituted purchasers".

It seems plain from the record that the Mayor and City Council of Baltimore City stood ready to convey its interest in the fifteen foot right of way extending from Potee Street to the property sold; and the City Council passed an ordinance directing that such a conveyance be made. It appears that all of the objections to the title which the substituted purchasers and the Title Company raised were cured or could have been cured at any time the substituted purchasers stood ready to comply with the terms of the mortgage sale.

The real bone of contention in this case is that the substituted purchasers claim a strip of land about two and one-half feet in width contiguous to and running along the north wall of the Walnut Grove building a distance of one hundred and thirty-four feet eight inches. This area was outside of the dark line which delineated the northermost line of lot "A". No such area is shown on lot "A". On the day that the sale in question was made, lots shown on the plat from "D" to "L" fronting on Patapsco Street were also sold. The plat shows that lots "B" and "C" (which were not sold that day), "D", "E" and "F" extend to the north wall of the building known as Walnut Grove Club, and to the black line delineating the northernmost line of lot "A", which also represents the wall of the Walnut Grove building. All of the lots from "D" through to "L" have a uniform depth, as shown by the plat. Mr. Friedman attended both sales that day. The auctioneer was asked if the depths of these lots extended to the wall, and Mr. Patz, one of the trustees, announced that they did. This testimony is contradicted but the court saw and heard the witnesses testify and found as a fact that the statement was made by Mr. Patz. So that Jacob L. Friedman, who purchased the property at this mortgage sale as agent for those who were substituted for him as purchasers, must have heard this announcement, and the evidence shows that one, if not more, of the substituted

purchasers was present at the sale. There is considerable evidence in the record regarding whether this two and one-half foot fringe along the north wall was sold as a part of lot "A", but the court heard all of this testimony, had the opportunity, which we do not possess, of seeing and judging the witnesses as they testified, and found as a fact that this two and one-half foot fringe did not pass under the mortgage sale. We cannot say that the finding of the court in this regard was clearly wrong, and we accept it as a fact found in the case that this fringe did not pass under the mortgage sale.

There are some other matters pertaining to the condition of the property at the time of the sale, but Mr. Friedman testified that he viewed this property both inside and outside before and on the day of the sale. Certainly one buys what he sees. *Vogler v. Geiss,* 51 Md. 407, at page 411; *Ivrey v. Karr,* 182 Md. 463, at pages 470-476, 34 A. 2d 847. A defect in a building which a purchaser saw before he bought the property cannot be set up as a reason for rejecting the sale, but even so, the court has allowed for one of these defects a reduction of $100.00 in the purchase price, it having been established by the testimony that the defect could be remedied at a cost not exceeding $100.00. This action of the court is not prejudicial to the purchaser.

The sale under the mortgage in this case was not ratified in the usual course of such a proceeding, because it developed that all the property sold was not within the description contained in the mortgage in the foreclosure proceeding. Then came the consultations with a view to curing the defects then apparent. It was agreed that no exceptions would be filed to the sale unless the trustees, or their attorney, were notified in advance. All of the defects in the title were cured, or could have been promptly cured. The sale was not consummated because the trustees would not convey the two and one-half foot strip of land adjacent to the northernmost line of lot "A", which did not pass under the sale. This caused the delay, and the appellants waived the point that the sale

was not consummated in accordance with the terms of the contract of sale, and that time was of the essence of the contract.

"There is no dispute as to the right of the plaintiff to a decree if he has effectually supplied the deficiencies in his title existing at the time of the contract of sale. The rule is that the vendor need not have a marketable title at the time of the agreement, but is only required to be in a position to convey such a title by the time the decree is entered, provided that, as here, time is not of the essence of the contract, and the vendor appears to have acted in good faith." *Hammer v. Westphal,* 120 Md. 15, at page 18, 87 A. 488, 489.

It appears from the record in this case that there is no question the trustees acted in good faith; that the time when the matter was to be consummated was waived; and hence was not of the essence of the contract; that the infirmities in the title were cured or could have been almost immediately cured; that the only reason the sale was not consummated was that the appellants claimed property that was not sold or offered for sale at the time their agent, Jacob L. Friedman, purchased the property. There was no reason for a person who knew of the circumstances to refuse title to the property. *Zulver Realty Co. v. Snyder,* 191 Md. 374, 62 A. 2d 276.

"A title, to be marketable, need not be free from every conceivable technical criticism; objections which are merely captious, although within the range of possibility, should be disregarded by the Court." *Zepp v. Darnall,* 191 Md. 68, 59 A. 2d 774, at page 776.

It is not only captious, but it is arbitrary and capricious for one to fail to perform his contract for the purchase of land because the vendor refuses to include in the deed property the vendee did not buy.

The last question raised by the appellants is that the court in the receivership proceeding was without jurisdiction to authorize the receivers to convey land by joining in a deed with the trustees to cure a defect in the

title of land sold under the mortgage, unless there was a report of said sale to the receivership court and publication of a nisi order warning anyone in interest to object to the sale, in accordance with rule No. 662 of the Supreme Bench of Baltimore. The appellants contend that a failure to comply with this rule is a matter of jurisdiction, and as this procedure was not followed the receivership court was without jurisdiction to authorize the receivers to join in a deed with the trustees to cure title. The record in this case is rather convincing that the price that the property brought at mortgage sale was a high price, and the consummation of the sale would be for the benefit and advantage of the creditors of McLane. The holders of mortgages, judgment creditors, and the holders of liens, all joined in and cooperated to have the mortgaged premises in this case sold free of all liens. Not a general creditor, so far as this record shows, has made the slightest objection to the action of the receivership court. The appellants are not creditors of McLane, but they have accepted the part to the end that the sale made to them be set aside and rendered null and void, and the evidence seems to show that between the time of the sale and the time of the hearing of the exceptions in the lower court, property values have fallen. The receivership proceeding and the mortgage foreclosure proceeding were separate and distinct. The order of the receivership court, passed on August 13, 1948, was a final order insofar as it affected property held by the receivers. It authorized the receivers to convey property by joining in a deed with trustees in the foreclosure proceeding for the purpose of curing title to the property sold by the trustees. And it is apparent from the plat that the small pieces of land which the receivers were authorized to convey were of very little value. No appeal was taken by anybody to this court from that order. To the contrary, the exceptants did not question it until the trustees refused to deed them property not included in the advertisement for sale of the mortgaged premises. If that order con-

ferred no jurisdiction upon the receivers, then it could be attacked in any court, but if the court had jurisdiction, then it could only be attacked by a direct appeal to this court. The receivership court had jurisdiction over the property of McLane, who was insolvent and unable to meet his obligations and to pay his bills as they matured in due course of business. The receivership court, therefore, had jurisdiction over Mr. McLane and his property and over claims of creditors filed in the proceeding. It had jurisdiction to pass the order referred to. If that order was incorrectly passed, the remedy of an interested party was to appeal directly to this court and have the action of the court in passing the order reviewed. Such an order could not be attacked in a collateral proceeding because it involves a matter of procedure and does not involve a matter of jurisdiction. As we have noted, the receivership case was a separate and distinct proceeding from the foreclosure case and to attack the order of the receivership court here considered in the foreclosure case would be a collateral attack, and no order of a court having jurisdiction can be nullified when collaterally attacked. We must hold that the contention of the appellants in this regard cannot be sustained.

In *Cockey v. Cole*, 28 Md. 276, 92 Am. Dec. 684, the court was considering a foreclosure sale. At side page 284 of 28 Md., 92 Am. Dec. 684, it said: "In the proceeding under consideration, it may be that there were errors and irregularities for which the sale would have been set aside, if exception had been taken to its ratification in the direct proceeding, or that the final order of ratification would have been vacated, if an appeal had been taken therefrom; but it does not by any means follow, that objection can be sustained, when made for such causes, in a collateral proceeding."

At side page 285 of 28 Md., 92 Am. Dec. 684, it is said: "That court had jurisdiction of the subject matter; and if its jurisdiction was improvidently exercised, it would be intolerable to hold that its errors could be corrected,

in a collateral proceeding, at the expense of an innocent purchaser, who had a right to rely upon the final order of ratification of the sale, as the proper exercise of judicial authority. Sales thus sanctioned, when collaterally called in question, should be upheld by every legal intendment."

The court then quoted from *Thompson v. Tolmie,* 2 Pet. 157, 7 L. Ed. 381: "These proceedings were brought before the court below collaterally, and are by no means subject to all the exceptions which might be taken on a direct appeal. They may well be considered judicial proceedings; they were commenced in a court of justice, carried on under the supervising power of the court, and did receive its final ratification. The general and well settled rule of law in such cases is, that when the proceedings are collaterally drawn in question, and it appears upon the face of them, that the subject matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same, or an appellate court." *Schley v. Mayor, etc., of Baltimore,* 29 Md. 34, side pages 46-47; *Dorsey's Lessee v. Garey,* 30 Md. 489; *Connaughton v. Bernard,* 84 Md. 577, at pages 594-595, 36 A. 265; See *Hagerstown Furniture Co. v. Baker,* 158 Md. 574, 149 A. 556.

In *Fooks' Executors v. Ghingher,* 172 Md. 612, at page 621, 192 A. 782, at page 786, the court quoted Pomeroy Equity Jur. sec. 129, as follows: "In its most general sense the term 'jurisdiction,' when applied to a court, is the power residing in such court to determine judically a given action, controversy, or question presented to it for decision. If this power does not exist with reference to any particular case, its determination by the court is an absolute nullity; if it does exist, the determination, however erroneous in fact or in law, is binding upon the parties until reversed or set aside in some proceeding authorized by the practice, and brought for that express purpose."

We think that the receivers should not only join with the trustees to convey the property to the appellants, as hereinbefore referred to, but they should join in the deed for those properties that fringe the property sold, as shown on the plat filed by the appellants in the case. There was one piece of such property that Mr. Cullen said would be deeded to the appellants, but which is not covered specifically in the order of the court. The two and one-half foot strip of property adjacent to the north wall of the Walnut Grove building is not to be included in the deed to appellants, as it was not sold to them by the trustees.

For the reasons given above, the decree of the lower court will be affirmed, with costs.

*Decree affirmed, with costs.*