SOMMERS ET AL. *v.* DUKES ET UX.

[No. 39, October Term, 1955.]

*Decided December 2, 1955.*

*Motion for rehearing and modification, filed December 15, 1955, denied January 3, 1956.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Eugene Hettleman,* for appellant.

*Sheldon A. Rubenstein,* for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree which ordered that the contract dated October 7, 1950, for the purchase of property in Baltimore City, entered into by Milton Sommers, as vendor, one of the appellants here, and by Louis Dukes and Mary Dukes, as vendees, appellees here, be declared null and void because it was fraudulently entered into by the sellers. The decree also referred the case to the court auditor for an audit and ordered the appellants to pay the costs.

This contract dated October 7, 1950, originally provided that the purchase price was to be $3,950.00 subject to a ground rent of $90.00. After the contract was made, the appellees were dissatisfied with it and employed an attorney to obtain a revision. As a result another contract was drawn similar in all respects to the original except that the purchase price was reduced to $3,750.00 and the ground rent to $72.00. This new contract was also dated October 7, 1950, although not signed that day. It provided, among other things, that: "* * * the balance is to be paid by payments of twelve dollars ($12.00) per week, beginning October 28, 1950, and continuing regularly every week thereafter without fail; said payments to be made at such places as the vendor may from time to time designate: said payments are to be applied by the vendor as follows: first, to payment of taxes and all public assessments and charges; second, to payment of ground rent and *insurance;* third, to payment of interest at the rate of six percent per annum computed annually in advance on the balance due at the beginning of each year; fourth, to principal." (Italics supplied.)

The property covered by this contract of sale had been in the name of Bertha Schapiro since 1934 as life tenant with powers of disposition with the written consent of her three sons, Israel Louis Schapiro (often referred to as Louis Schapiro), Harry Schapiro and Abraham Schapiro. The appellant, Sommers, at no time had any inter-

est in the property nor any written authorization to sell it. Insurance was first placed on the property in August, 1954, four years after the contract was signed, in the name of Bertha Schapiro alone and in the amount of $2,000.00. The improvements on the lot were completely destroyed by fire on November 16, 1954.

On January 31, 1955, the appellees filed an amended bill of complaint against Milton Sommers, Bertha Schapiro and Liberty Mutual Insurance Company, Inc., (Liberty), in which they recited the execution of the later contract, that they had continuously made the weekly payments called for therein, and that the property had been completely destroyed by fire. Further that Milton Sommers advised the appellees prior to the fire that the property was fully covered by insurance in the amount of the purchase price. The appellees understood that the property was covered by fire insurance for which they were charged out of the weekly payments. When the appellees requested from Sommers, after the aforesaid fire, the name of the insurance company, he then advised them that they were not covered by insurance nor had they any interest in said property or in the fire insurance policy. The appellees, relying on the fact that they were fully protected against loss by fire, upon investigation, found that the owner of record of the property was Bertha Schapiro and that the fire insurance policy in the amount of $2,000.00 was issued in the name of Bertha Schapiro with Liberty which had possession of the $2,000.00 due under the policy. They further alleged that they had been greatly deceived, misinformed and gross misrepresentations had been made to them in the way of fraud to prevent them from collecting the fire insurance policy and that the entire contract as to the owner or agent had been misrepresented to them. They asked for an order restraining Liberty from paying any sum to Bertha Schapiro; that the court pass a decree stating that the proceeds from the Liberty policy belonged to the appellees; that appellees be entitled

to recover from Sommers individually and as agent for Bertha Schapiro the full value of said property; and that they be further entitled to recover the difference between the value or cost of said property and the said policy of insurance. They also asked for other and further relief.

The chancellor, in his opinion, found that fraud had been committed on the appellees, because the contract was signed by one individual as owner of the property while it was owned by someone else and also because "the payments were taken on the pretext of fire insurance, when no such fire insurance was taken out, again to appropriate the funds, which would be allocated to insurance, either to the credit of the purchase price or for the benefit of the vendor." He decreed that the contract "be declared null and void on the grounds that it was fraudulently entered into by the seller and that an audit shall be made by one of the Court Auditors to determine the entire amount paid by Louis and Mary Dukes to Milton Sommers, Louis Schapiro or any of their agents under the said contract. And the said amount, after being determined by the said Court Auditor, the said Auditor shall further deduct from the said money the interest, taxes and ground rent paid by purchasers and the balance due the sellers by the purchasers and the balance shall be decreed to belong to the said Louis and Mary Dukes, his wife and a judgment be rendered against the said Defendants for such amount. And it be further ordered that all costs, with interest from date thereof, in this proceedings shall be paid by the Defendants." From that decree Milton Sommers and Bertha Schapiro appeal.

As to the ownership of the property, both the Dukes testified that at the time the contract was signed they were told by Sommers that he was the owner of the property. Sommers testified that Louis Schapiro, at the time of the signing of the contract, told Dukes that Schapiro's mother owned the property. Louis Schapiro testified

that his mother, Bertha Schapiro, had a life interest in the property with power to sell with the consent of her three sons, Israel Louis Schapiro, Harry Schapiro and Abraham Schapiro. He further said that he had been managing his mother's affairs and had authority from her and his two brothers to manage, sell and rent the property; that he employed Sommers as their agent; and that Mr. and Mrs. Dukes knew this at the time of the signing of the contract. At the trial of the case below the solicitor for Liberty testified that since 1934 Bertha Schapiro had been the life tenant of the property with power of complete disposition with the consent of her three sons, Israel Louis, Harry and Abraham. The chancellor seems to have concluded that Milton Sommers' signing of the contract as owner, when he did not own it, constituted fraud. There is nothing in the testimony here to show that the appellees were in any way influenced in this purchase by the fact that they thought Sommers was the owner of the property. The Dukes did not so testify. The contract in this case contained the clause: "And upon payment of the purchase price in the manner as aforesaid, proper papers for the transfer of title of said property in accordance herewith shall be executed and procured by the vendor at vendee's expense, all adjustments being to the date hereof; all documentary stamps to be paid by the vendee." It is difficult to believe that the Dukes were influenced in their purchase of the property by the fact that they thought Sommers was the owner.

In *Clark v. Kirsner,* 196 Md. 52, 55-56, 74 A. 2d 830, Kirsner sold property to Clark under an agreement of sale. An action was brought to rescind the contract and have a declaratory judgment for the amount owing by Kirsner to Clark. Judge Markell said in that case: "So far as the terms of the contract are concerned, it is not disputed that if a vendor is able to give good title at the time for conveyance under the contract, it is immaterial, at least in the absence of bad faith, that he may not have

been able to do so at the time the contract was made. *Maryland Construction Co. v. Kuper,* 90 Md. 529, 45 A. 197; *Friedman v. McLane,* 193 Md. 565, 69 A. 2d 253. Nevertheless plaintiffs contend that they were entitled to rescind because of innocent misrepresentations as to ownership of the property and the amount of the ground rent, and that the right to rescind could not be defeated, after it was exercised, by defendant Kirsner making his misrepresentations good.

"We shall assume, without deciding, that plaintiffs have in this proceeding the same rights, if any, as they would have in equity. If they had a right to rescind they might exercise this right by notice and sue to recover payments made in an action for money had and received. Such an action 'is commonly said to be equally remedial with a bill in equity.'

"In equity, unlike an action of deceit, rescission may be had for innocent misrepresentations. *Euzent v. Barrash,* 180 Md. 451, 454-455, 25 A. 2d 462; *Donnelly v. Baltimore Trust Co.,* 102 Md. 1, 32, 61 A. 301; *Cahill v. Applegarth,* 98 Md. 493, 503-504, 56 A. 794. Likewise, unilateral mistake may be a defense to specific performance. *Somerville v. Coppage,* 101 Md. 519, 61 A. 318. But either at law or in equity a misrepresentation (*Pomeroy, Equity Jurisprudence,* 5th Ed., Secs. 898, 898a; *Williston on Contracts,* Revised Edition, Sec. 1490) or mistake (*Williston, supra,* Sec. 1544), to constitute a ground for relief or a defense, must be material. Even in an action of deceit, based on actual fraud, a misrepresentation as to ownership of property sold ordinarily is not material. *Cahill v. Applegarth, supra,* 98 Md. 505, 56 A. 794; *Boulden v. Stilwell,* 100 Md. 543, 556, 60 A. 609, 1 L. R. A., N. S., 258. In proceedings for rescission materiality of innocent misrepresentations is more essential than in case of fraudulent misrepresentations. *Restatement, Contracts,* Sec. 476, comment.b; *Williston, supra,* Sec. 1490.

"It is unbelievable that plaintiffs in making the agreement of purchase were influenced by belief that defend-

ant Kirsner, and not his corporation, was owner of the property. The evidence indicates that they were not influenced by any such representation and did not care who held the legal title. They did not have any examination made of the land records for two years." See also *Cooperative Milk Service v. Hepner,* 198 Md. 104, 118, 81 A. 2d 219.

In the instant case, the bill of complaint does not ask that the contract of sale be declared null and void for fraudulent misrepresentation. Appellees had the choice of repudiating the contract or ratifying it and suing for damages to redress the injury inflicted by the false representation under it. *Telma v. Gingell,* 157 Md. 411, 146 A. 221. They have chosen the latter. Ratification of the contract, however, does not deprive the injured parties of redress for fraud practiced upon them in its inception. *Levin v. Hurwitz,* 148 Md. 249, 254, 129 A. 218. The question, therefore, is what damages, if any, should be awarded the appellees under the contract.

As to the fire insurance on the property, Dukes testified, over objection, that at the time of the signing Sommers told him that the property was insured for $4,-000.00. This conversation was denied by Sommers. Dukes further said he was concerned about the insurance and wanted to put fire insurance on the property as he had fire insurance on his furniture. The house, as a result of the fire, was a complete loss. Mary Dukes, over objection, testified that at the time of the signing of the contract Sommers "gave them to understand" that the property was insured for $4,000.00. To the question: "Did you have any fire insurance?" she replied: "Yes; furniture insurance." She also testified that they had no other fire insurance on the property. Milton Sommers stated that he did not know whether there was any insurance on the property when it was sold to Dukes and that he did not check this. Louis Schapiro testified that they did not charge Dukes for the insurance on the account which they kept of payments for the property. He stated that as far as he

knew the only fire insurance on the property at the time of the fire was that of $2,000.00 placed with Liberty and there was no fire insurance on the property from October 7, 1950, until it was placed with Liberty in August, 1954. The solicitor for Liberty in his opening statement stated that Liberty carried fire insurance on the premises for $2,000.00; that the name of the assured was Bertha Schapiro; that the insurer was notified by the agent for Mrs. Schapiro that the policy should also cover as contract purchasers, Louis Dukes and Mary Dukes, his wife; and that Liberty was ready to pay the proceeds of the policy upon proper proof of loss to such persons as the court directed payments to be made, as long as those persons were either Bertha Schapiro or Louis and Mary Dukes. He later stated that this insurance was not placed on the property until August, 1954.

It is a general rule that parol evidence is inadmissible to vary or contradict the terms of a written instrument. However, if any doubt arises from the language of a contract as to the intention of the parties, extraneous evidence may be admitted to aid the court in comprehending its meaning. *Roberts v. Bonaparte*, 73 Md. 191, 204, 20 A. 918; *United Railways Co. v. Wehr*, 103 Md. 323, 339, 63 A. 475; *Dinsmore v. Maag-Wahmann Co.*, 122 Md. 177, 89 A. 399; *Gross v. Stone*, 173 Md. 653, 197 A. 137; *Trotter v. Lewis*, 185 Md. 528, 533, 45 A. 2d 329; *Stone v. Bradshaw*, 64 Idaho 152, 128 P. 2d 844. The meaning of the provision in the contract that part of the weekly payment should be applied to the payment of "insurance" is doubtful. Whether "insurance" meant liability insurance, windstorm insurance, fire insurance, or any other insurance is not clear. We are therefore of opinion that the testimony of the appellees that Sommers said the property was insured for $4,000.00 was admissible. "Fraud" in equity includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and which are injurious to another, or by which an undue and unconscientious advantage is taken of another.

Bachrach v. Washington United Cooperative, 181 Md. 315, 322, 29 A. 2d 822, 826; Berman v. Leckner, 193 Md. 177, 186, 66 A. 2d 392. The fact that a provision was made for insurance to be deducted from the weekly payments was sufficient for the Dukes to believe that this insurance would be continued. The chancellor, who saw and heard the witnesses, concluded that the agreement of sale contemplated that a fire insurance policy in the amount of $4,000.00 was on the property at the time the agreement was signed, and that the appellants were to apply part of the weekly payments on the contract to the payment of the premium on this fire insurance policy. The appellees made these weekly payments and the appellants accepted them without making payment on any insurance. Instead of paying for insurance appellants applied the funds to a credit on the purchase price. We think the appellees should be put in the same position as if the insurance had been in effect at the time the contract was signed and had been continued to the time of the fire.

Appellants rely on the case of Mammoth Garage v. Taylor, 220 Ky. 499, 295 S. W. 429. In that case the Mammoth Garage, seller, sold to the appellee, purchaser, two automobiles. A cash payment was made and a chattel mortgage executed. In the chattel mortgage the purchaser agreed to keep the two motor vehicles insured against fire and theft. The estimated cost of insurance was embraced in the purchase price after a fire. The purchaser sought recovery for seller's failure to keep the automobiles insured. The Kentucky Court there held that the purchaser must prove that the seller agreed to insure the automobiles and that recovery against the seller was not authorized where the chattel mortgage did not require the seller to keep them insured. That case is not helpful here.

Here, as found by the chancellor who saw and heard the witnesses, the agreement contemplated that fire insurance in the amount of $4,000.00 was to be kept on the property by the appellants from the weekly payments

made by the appellees. The weekly payments were made by the appellees but not applied by the appellants to fire insurance. As a result the appellees are entitled to damages.

We will therefore remand the case for the statement of an account between the parties on the following basis. First to be determined is the amount paid by the purchasers on the property. To that amount is to be added the full insurable value of the property at the time of the fire, not exceeding $4,000.00. From the result thereby reached is to be deducted an amount equivalent to the premiums which would have been due on a $4,000.00 fire insurance policy from the time of the execution of the contract to the time of the fire; taxes, ground rent, and interest on the balance of the purchase price to the date of the fire; and the balance due on the purchase price. A decree is then to be passed ordering the appellants to pay the amount thereby determined to the appellees, and also ordering them to convey the property to the appellees subject to a ground rent of $72.00. After that decree is complied with, the proceeds from the $2,000.00 policy are to be paid to the appellants.

*Decree reversed, and cause remanded for further proceedings as herein directed. Costs to be paid by the appellants.*