## CLYDE P.. BYRD *vs.* EMIL RAUTMAN and WILLIAM H. MARRIOTT.

*Fraud—Rescission of Contract—Delay in Seeking Relief—False Statement as to Party's Motive.*

A party who seeks to have an executed contract rescinded on the ground of fraud, must be guilty of no unnecessary delay. A bill filed for such purpose more than three years after the contract was made and a year after plaintiff acquired full knowledge of all the facts, will be dismissed because not filed within a reasonable time.

A false statement by a buyer of property as to his *motive* in desiring to make the purchase, when it does not involve any false statement of fact on which the seller had a right to rely, or any *suppressio veri*, does not constitute such fraud as will entitle the seller to rescind the contract of sale.

Appeal from a decree of Circuit Court No. 2, of Baltimore. City (HARLAN, C. J.), sustaining a demurrer to the bill of complaint in this case and dismissing the same.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE,. PAGE and BOYD, JJ.

The cause was submitted for the appellant on brief by *Hodson & Hodson.*

*R. B. Tippett* (with whom was *Jas. E. Tippett* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

This case comes before us on demurrer to the bill filed by the appellant. The substance of the complaint is, that by means of certain false representations the appellant was fraudulently induced to sell to the appellee certain stock in the North Baltimore Land and Improvement Company of Baltimore City, whereby the appellant suffered injury. The

prayer of the bill is that the transaction may be declared null and void ; that Rautman and the secretary of the company may be enjoined from delivering, selling, transferring, or otherwise disposing of the stock until the further order of the Court, and for general relief.

It is contended that such relief ought not to be granted, because it does not appear that the contract was rescinded within a reasonable time after the discovery of the alleged fraud. The contract has been fully executed, as will hereafter appear ; and in such cases it is not only necessary for the complainant to establish the alleged fraud by indubitable proof, but he must "elect to repudiate the contract at once upon the discovery of the fraud," and be "guilty of no unnecessary delay in coming to a Court of Equity for relief." *Wenstron Consolidated Dynamo, &c., Co.* v. *Purnell,* 75 Md. 120. The bill leaves it uncertain at what precise period the appellant became aware of the alleged misrepresentations. The averments of the seventh paragraph are, that he did not discover the fraud "until long after the time when they were made," but "did discover them to be false within three years before the bringing of this suit ;" and that he remained ignorant of the real facts "until the reorganization of the said corporation, which was considerably within one year before the bringing of this suit." The contract between Rautman and Lord was made in 1893, as appears by the receipt of the former to the latter, and the misrepresentations complained of were made "at or about" the same time. So that it appears that the contract now sought to be declared null and void was entered into more than three years ago ; and that the appellant has waited, after full knowledge of the real facts, for nearly a whole year before doing or saying anything indicative of his desire to have the contract rescinded, or before coming to a Court of Equity for relief. Having abided by the transaction for so long a period after becoming cognizant of the fraud, he has now no standing in a Court of Equity.

But apart from this are the misrepresentations contained

in the bill, such as will entitle the appellant to the relief for which he prays?

The law is well settled that where one by artifice and fraud inflicts an injury upon another Courts of Justice will rectify the wrong by sustaining an action for the deceit, or by annulling all that has been done. Even before the leading case of *Pasley* v. *Freeman*, 5 T. R. 63, it was held that where there is a concurrence of fraud and damage, an action lies. In our own Court the subject has been exhaustively treated. In the case of *McAleer* v. *Horsey*, 35 Md. 452, this Court, after stating the impossibility of defining fraud, since from its very nature it eludes all laws, without appearing to break them in form, proceeds nevertheless to lay down certain rules, based upon precedent and common sense, for the guidance of tribunals in determining what shall " amount to cognizable fraud." These rules, as thus laid down, may be summarized as follows : 1st. The fraud must be material, that is, it must " relate distinctly and directly to the contract and affect its essence and sub- stance ;" " for if it relate to another matter, or to this only in a trivial and unimportant way, it affords no ground for the action of the Court. " 2nd. While there is no positive standard for determining whether the fraud be material, there can be no better rule than this—if the fraud be such that had it not been practiced the contract would not have been made, or the transaction completed, then it is material to it ; but if it be shown or made probable that the same thing would have been done in the same way, if the fraud had not been practised, it cannot be deemed material. 3rd. The misrepresentations must be made with a design to im- pose upon or cheat the party complaining ; that the latter relied upon them and had a right to rely upon them in full belief of their truth and in consequence suffered actual injury. If, however, the misrepresentations relate to another matter, or to the one in question only in a trivial and unimportant manner, the party complaining would have no right to rely upon them as governing his conduct ; his ac-

tion then could not be attributed to the misrepresentations, but to his own folly, and in such case he cannot ask the law relieve him from the consequences. So a representation vague, indefinite in terms, conjectural or exaggerated, is not sufficient, since, as was said in *Buschmann* v. *Codd*, 52 Md. 207, " such indefinite representations ought to put the person to whom they are made upon inquiry, and if he chooses to put faith in such statements and abstain from inquiry, he has no reason to complain."

The facts of the case as disclosed by the bill and exhibits are that in May, 1891, Franklin Wilson and Charles W. Lord sold to the North Baltimore Land and Improvement Company certain lands for the sum of $121,000, and received in payment thereof $1,500 in cash, $51,000 in capital stock of the company and six notes of the company aggregating in amount $68,000. The company deposited with them $35,000 of the stock, as collateral for the payment of the cash and deferred payment, and also five thousand of the stock for commissions on sales of stock and other expenses. A few days later Lord and Wilson entered into an agreement with the appellant, appellee and Carpenter and Underhill, by which, in consideration of the services rendered, the appellant and his associates were to receive from Lord and Wilson a commission of four dollars in stock for every seven dollars the said Lord and Wilson should receive in payment of its indebtedness from the company— the commission to be equally divided among the parties entitled ; but this commission stock was not to be sold until the indebtedness to Lord and Wilson was paid, though it could be used in payment for lots purchased of the company at an advance of twenty per cent. over its par value. One-eighth of this stock was to remain with Lord and Wilson until all the company's notes were paid in full, with authority to them to use the stock for the payment of interest on any of the notes of the company remaining unpaid after the first of October, 1892. It thus appears each of these four parties had an equal interest in the stock to be

awarded them as commission—stock for services rendered. On the fourth of August, 1891, the appellant became the owner, by purchase of Carpenter's right, and thereafter was entitled to one-half of the stock. After the making of this agreement, the appellee agreed with Lord to sell him a certain property for $12,500, and to receive in payment one of the notes of the Improvement Company for that amount, secured by 1250 shares of that company as collateral. At the same time he demanded and received of Lord 750 shares, due to himself and associates as commission stock. The bill states, it was "about the same time, either before or after" this contract was made, that the appellee approached the appellant to purchase his interest in the commission stock. He then made the misrepresentation that forms the substance of the appellant's complaint. He stated, "he was about to contract with Lord for the purchase by Lord of his house and lot for $12,500, in notes secured by collateral stock of the said corporation, but that the promoters' or commission stock which would be due the plaintiff and his associate promoters on said deal was to come out of that amount of stock, and he would therefore be unable to make the deal unless the plaintiff would make a liberal and satisfactory settlement of his share of the promoters' stock." The bill proceeds, "instead of his full share of the promoters' stock he offered your orator $500 in cash, or $1,000 in stock, which said sum of $500 the plaintiff was by reason of the aforesaid false and fraudulent representation of the said defendant induced to accept." The falsity of the representation is alleged to be in the statement that the promoters' stock was to come out of the $12,500 of collateral stock, that is, that while Rautman was to receive the note of the company for $12,500, the stock held as collateral stock to secure its payment would be reduced by the commission stock.

Even if the averments of the bill be undestood as meaning that the sum of $12,500, the price of the house, was to be reduced by the amount of commission stock, we can per-

ceive nothing in the statement, if untrue, that was calculated to deceive the appellant as to the real value of his interest in the stock. The misrepresentation was merely a false statement of the appellees' motive in desiring to purchase. After making it he tendered the appellant an offer to purchase at $1,000 in stock or $500 in cash. The appellant could not have been deceived as to his own interests. Rautman's motive in desiring to purchase had and could have no bearing upon the question as to the price Clyde ought to accept. It had no relevancy to the transaction between the parties, or if it had it related to it in a trivial and unimportant way, and if Byrd acted upon it and was thereby induced to sell, it was his own folly or fault and he cannot ask to be relieved from the consequences.

The representation of the motive actuating a buyer cannot be more than a "nude assertion," unless it incorporates some false averment of a fact on which the other party relied and ought to rely, and without which the contract, it is reasonable to infer, would not have been made, or suppresses some fact, the knowledge of which it is reasonable to infer would have made the party abstain from the contract altogether. It is difficult to perceive how the statement by Rautman that he desired to buy the appellant's stock at a low rate, in order that he might make a better contract with Lord, could have deceived Clyde so that he was induced to sell his stock at an under valuation. Clyde might properly have said to Rautman : "I have nothing to do with your motive in buying, my stock is worth so much, and I will not take less." Rautman's representations at most, were only buyer's talk, that Byrd should have disregarded. In *Vernon* v *Keys*, 12 East. 632, this matter was considered by the Court. The plaintiff in that case claimed to have been injured in the sale of his business and stock-in-trade by the misrepresentations of the defendant, to the effect that he, the defendant, was about to enter in partnership with other persons, and these would not consent to give the plaintiff a larger price than forty-five hundred pounds, while in

fact these persons would give as much as fifty-two hundred pounds. LORD ELLENBOROUGH said the statement amounted only to a false reason for his limited offer—"a false represen-tation in a matter merely *gratis dictum* by the bidder, in respect to which the bidder was under no legal pledge or obligation to the seller for the precise accuracy and correct-ness of his statement, and upon which, therefore, it was the seller's own indiscretion to rely, and for the consequences of which reliance, therefore, he can maintain no action." *Pres-cott* v. *Wright*, 4 Gray, 461. For the reasons above ex-pressed the decree of the lower Court must be affirmed.

*Decree affirmed with costs.*

(Decided April 1st, 1897).