WALTER J. TELMA *v.* J. EARL GINGELL ET AL.
[No. 20, April Term, 1929.]

412

*Decided May 23rd, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Lansdale G. Sasscer,* with whom was *Charles C. Marbury* on the brief, for the appellant.

*Raymond S. Williams* and *John S. Stanley,* with whom were *William Stanley* and *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

On November 5th, 1926, the plaintiff, Walter J. Telma, bought of J. Earl Gingell and Sadie Gingell, his wife, a lot of land that was improved by a building whose first floor was a store room, with apartments overhead. At the time of the sale the store room was occupied by the Great Atlantic and Pacific Tea Company at a rental of $65 a month, and the two apartments were under lease and yielded a monthly return of $30. The testimony on the material facts at issue is conflicting, and need not be set forth and analyzed. It is enough to state that the plaintiff has established by the preponderance of the testimony that the plaintiff was induced to buy the improved lot by the false and fraudulent representation, made before the sale by the defendants or their agent to the plaintiff, that the store room was occupied by the Great Atlantic & Pacific Tea Company under an unrecorded lease

whose term was for five years. This was a material representation of an existing fact which was peculiarly within the knowledge of the vendor, and, therefore, was one upon which the plaintiff had the right to rely. *Needle v. Cover,* 138 Md. 646; *Sommerville v. Coppage,* 101 Md. 519, 525; *Kleiman v. Needle,* 140 Md. 107, 112-114; *Mignault v. Goldman,* 234 Mass. 205; *Dimmock v. Hallett,* L. R. 2 Ch. 21, 28; *Palmer v. Johnson,* 13 Q. B. Div. 351, 357, 359.

The lease to the Great Atlantic & Pacific Tea Company was executed on June 27th, 1925, and the term began on August 1st of that year and expired on the last day of the ensuing June (July), at the rental of $780, payable in twelve advance monthly installments of $65, with the privilege to the lessee of four successive renewals of the lease for one year, with the rental for every one of such renewals at the rate of $70 a month. Before the expiration of the first year, the lessee notified the lessors that it would not renew the lease; but it held over, at the least, as tenant from month to month, paying a monthly rent of $65; and this was the relation between the lessors and lessee at the time the representation was made to the buyer. The purchaser, however, did not discover this situation until January 19th, 1927, the same day, but after, the sale had been fully consummated. The deed had been delivered and all matters relative thereto had been adjusted and paid when this discovery was made.

Upon the discovery by the vendee of the fraudulent misrepresentation, the purchaser had to elect between two rights. He was put to the choice of repudiating or ratifying the conveyance, although the transaction had been fully completed by conveyance and payment. If he adopted the first alternative he repudiated the conveyance and sought its rescission and a restoration of his situation before the contract; but if he chose the second, he ratified the grant but could obtain damages to redress the injury inflicted by the false and fraudulent representation. These rights were inconsistent and mutually exclusive, and the discovery put the purchaser to a prompt election. *Williston on Contracts,* secs. 1528-1531;

*Shappirio v. Goldberg,* 192 U. S. 232, 242, 243, 48 L. Ed.
419; *Brager v. Friedenwald,* 128 Md. 8, 34; *York Mfg. Co.
v. Hoblitzell Nat. Bank,* 118 Md. 505, 512; *Latrobe v. Dietrich,* 114 Md. 8, 21; *Bierce v. Hutchins,* 205 U. S. 340, 51
L. Ed. 828.

Upon the discovery of the misrepresentation, with the attendant circumstances which, according to the plaintiff's testimony, made the misrepresentation a deliberate fraud, the
plaintiff, silent and acquiescent, remained seised of the reversion, and on February 10th he collected $15 as the month's
rent from the tenant of one of the apartments. On February
18th, almost a month after the misrepresentation was known,
the tea company, the tenant of the store room, moved out, and
the plaintiff accepted from it a surrender of the term; and
apportioned the rent from February 1st to the day of the
removal as $39.06, upon the basis of a rent of $65 a month.
After the tea company had left the premises, both the store
room and one of the apartments were vacant, and the plaintiff saw Mr. Gingell and requested him to rent the property
for the plaintiff and Gingell promised that he would. For
this purpose, the plaintiff mailed to Gingell on February
24th the key to the store and to the unoccupied apartment,
and expressed the hope that Gingell would have good luck in
renting the store soon.

So, with full knowledge of the fraudulent misrepresentation, the plaintiff as the owner of the reversion collected the
rent as it fell due, accepted the surrender of the terms of
the store room and one of the apartments, and authorized one
of the vendors to secure for him tenants for the unoccupied
portions of the premises, and sent that vendor the keys to
facilitate the leasing. To this summary must be added the
apportionment of the rent with the tea company, since this
involved an ending of a subsisting term before its expiration
by passage of time and, also, the relinquishment of the payment of a full month's rent from a tenant from month to
month. These acts are every one the unequivocal and unmistakable acts of the owner of the reversion. They are
inconsistent with any other theory and logically exclude any

different conception. The acts were deliberately done and had but one significance, and, so, without reference to the vendee's actual intention to choose, an election resulted which was final. The law does not permit a mental reservation to qualify unequivocal acts, which imply a final choice and affirmation. As was said in *Croft v. Lumley,* 6 H. L. C. 706: "His act would be taken to be right and bind him, rather than his words make his act wrong." *Non quod dictum est, sed quod factum est, inspicitur. Co. Litt.,* 36a; *Troup v. Appleman,* 52 Md. 456, 459-460; *Cole v. Hines,* 81 Md. 476, 479-482; *Munich Co. v. United Surety Co.,* 113 Md. 200, 218, 219; *Stiegler v. Eureka Life Ins. Co.,* 146 Md. 629, 641-644; *Latrobe v. Dietrich,* 114 Md. 8, 20-22; *Ewart's Waiver Distributed,* 84-88.

It follows that on February 24th, 1928, the plaintiff had elected to affirm the conveyance to him. Upon authority and principle, this affirmation is, under the circumstances, irreversible. In *Comyn's Digest,* Tit. Election, C. 2, it was early stated: "If a man once determines his election, it shall be determined forever." The right which accrued to the grantee upon the discovery of the real facts was a right of choice or election only. This right when exercised is exhausted, and there is no *locus poenitentiae;* and, consequently, if the grantee elects to affirm or to repudiate the conveyance, he can never after repudiate what he has once affirmed or affirm what he has previously disaffirmed. *Supra; Ewart on Waiver Distributed,* 100-105; *Williston on Contracts, secs.* 723, 683, 684, 687; *Clough v. London & Northwestern Rwy. Co.* (1871), L. R. 7 Exch. 26, 34, 36; *Scarff v. Jardine* (1882), 7 App. Cas. 360, 361.

Because of the finality of the plaintiff's acts of election, his subsequent conduct becomes immaterial; and, therefore, his letters of March 2nd and March 11th, 1928, in which he gave notice to the defendants that he had rescinded the sale, offered to reconvey the property, and to account for the rents received, and requested a return to him of the purchase price of $8,000, do not revoke a previous ratification which was made with a full knowledge of the fraudulent

misrepresentation. *Supra.* In this connection, it may, however, be observed that the plaintiff, after the first letter, collected on March 8th another month's rent for the occupied apartment. And the check of the tea company of $39.06 for eighteen days' rent was, according to the plaintiff's testimony, received on March 10th, but this was an error, since the check itself was produced and bears the date of May 3rd, 1927, on which day it was paid.

It was not until May 27th that the bill of complaint for a rescission was filed. The relief asked must be denied on this record.

*Decree affirmed, with costs.*