## ONE TWENTY REALTY COMPANY, INC. ET AL. *v.* BAER ET AL.

[No. 201, September Term, 1970.]

*Decided January 13, 1971.*

*Motion for rehearing filed February 8, 1971; denied and opinion modified February 16, 1971. Motions filed February 19 and February 22, 1971; denied March 1, 1971. Motion filed March 11, 1971; denied April 5, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Richard E. Zimmerman*, with whom were *Clater W. Smith, Jr.*, and *David E. Aldridge* on the brief, for appellants and cross-appellees.

*John J. Ghingher, Jr.*, with whom was *Goodloe E. Byron* on the brief, for appellees and cross-appellants.

HAMMOND, C. J., delivered the opinion of the Court.

The rapid and substantial increase in value of the Peters Farm, a tract of land of some 200 acres, occasioned by the probability that soon it would be annexed by the City of Frederick and would be rezoned for more profitable uses, led to the summary decree of the Circuit Court for Frederick County, holding that the appellant, Richard E. Zimmerman, a lawyer and licensed real estate broker, had breached his fiduciary obligations to his principals, the owners of the farm, and therefore they need not pay him the commission as selling agent and were entitled to be paid by him the profit he made as a result of selling the farm as owner.

In June 1965 the then owner of the land, Elizabeth Peters, sold it to one Paige for $325,000, of which $5,000 was paid down. The broker was One Twenty Realty Company, Inc., a corporate alter ego of Zimmerman. Less than a month later, the farm was sold to Eric Baer and Meyer Morse, licensed real estate brokers, appellees and cross-appellants, who will be hereinafter generally referred to as Baer, for $425,000. Some days later Baer engaged the legal services of Zimmerman at a fee of $62.50 an acre, or $12,500, to have the property rezoned. Soon One Twenty proposed to Baer that it be employed as broker to again sell the farm. Zimmerman, as president of One Twenty, wrote Baer in August 1965 suggesting a sale of the farm to an unnamed purchaser for $540,600 ($2,650 an acre) with a commission to One Twenty of $51,000 ($250.00 an acre). It was later agreed that if the proposed sale took place, the $51,000 commission would cover the $12,500 zoning fee. On September 2 Zimmerman wrote Baer to reveal the identity of the prospective purchaser as Janet Gilbert and to confirm agreement that after tne sale $20,400 of the commission was to be paid to Frederick Developers, Inc., another corporate alter ego of

Zimmerman (apparently because Frederick Developers had an available tax loss carryover).

The Baer-Gilbert agreement as to the purchase of the farm was formalized on September 18, 1965. It called for a deposit of $20,000, of which $10,000 was to be paid at execution and $10,000 on December 15. Settlement was to be on March 15, 1966. By its express terms, Mrs. Gilbert could walk away from the agreement by not paying the second $10,000 by December 15, 1965 (in which case she would forfeit the first $10,000) or by not settling on March 15, 1966 (in which case she would forfeit the $20,000). There was a further provision that she could extend settlement from March 15 to June 15 by paying $15,000 more, and that the $15,000 would also be forfeited if settlement were not made by June 15, 1966.

Mrs. Gilbert paid the first $10,000. On December 14 Zimmerman learned from her that she did not then have available the second $10,000 and was interested in getting out of the agreement, preferably at a profit. Zimmerman, without notice or advisement to Baer, personally took an assignment of the agreement from Mrs. Gilbert in consideration of his paying the second $10,000 to Baer and his promise that, if settlement occurred, he would refund her $10,000 payment and, if a profit were made on a resale, he would pay her $20,000. An addendum gave Mrs. Gilbert the option between February 1 and February 10 to pay Zimmerman $10,000 and have a reassignment of the agreement.

On December 15 Zimmerman wrote Baer: "I herewith enclose check in the amount of $10,000 which is a payment due, as of December 15th, under your contract with Janet Gilbert."

On January 4, 1966, Zimmerman assigned the Gilbert agreement to Zerco Investment Corporation, a third corporate alter ego formed by Zimmerman to take title to the property. On February 9 One Twenty, by its general manager, wrote Baer:

> "I hereby notify you on behalf of the [as of yet unrevealed] assignees of Janet Gilbert of

their intention of extending the settlement time on said contract until the fifteenth day of June, 1966. * * * [The] sum of [$15,000] will be deposited with Metropolitan Settlements, Inc. * * * not later than the eleventh day of February, 1966."

On February 18 Zerco assigned its interest in the Peters farm to a bona fide purchaser for value, a corporation named C. T. & S. The value was the amount of the price in the Baer-Gilbert deal plus a profit of $135,000 in the form of a note secured by a deed of trust. Zimmerman showed the farm to C. T. & S. a day after he bought the Baer-Gilbert agreement but he never advised Baer that it or any other purchaser was interested in buying the property.

On February 23 Zimmerman told Baer that he was the assignee of the Gilbert agreement, adding that Mrs. Gilbert was still "in the deal."

Zimmerman obtained the desired zoning classification in May 1966. On June 13 Zimmerman for the first time advised Baer that the purchaser was C. T. & S. and two days later at the settlement they were told that Zerco was the assignor.

The settlement involved the closing of the Baer-Gilbert contract and the Zerco-C. T. & S. contract. Baer questioned Zimmerman's right to the commission and by an undated, inartificially drawn agreement prepared on the spot, Baer and Zimmerman agreed that $16,900 would be paid to Frederick Developers ($3,500 having already been paid from Mrs. Gilbert's $10,000 payment), apparently on the theory that Zimmerman had earned it as a zoning and annexation fee and the matter of the $30,600 commission—$51,000 less the $20,400 paid to Frederick Developers—would be submitted to arbitration. As a result of the settlement, Zimmerman was repaid the $10,000 payment he made on December 15, 1965, and the $15,000 payment he made on February 11, 1965. Mrs. Gilbert received back her $10,000 down payment.

Judge Levine held that as a matter of law Zimmerman's fiduciary duty to Baer did not terminate with the execution of the Baer-Gilbert agreement, which he found to be an option, and that he breached that duty beginning on December 14. He held further, as a matter of law, that in accepting the purchase price under the Gilbert agreement and in deeding the Peters farm to C. T. & S., Baer did not waive or become estopped to assert a claim for damages resulting from Zimmerman's breach of fiduciary duty. We find that the facts and the controlling law compelled these holdings.

The finding that the Gilbert agreement was an option clearly was warranted. Mrs. Gilbert could withdraw before the second $10,000 was paid and before the $15,000 was paid. The choice was hers alone and, if she did withdraw, the only remedy or recourse Baer had under the express terms of the agreement was to retain what had been paid. Such an offer by an owner of the right to become a purchaser has been held to be an option. *Messina v. Moeller,* 214 Md. 110; *Schlee v. Bryant,* 247 Md. 689; *Dixon v. Haft,* 253 Md. 692, 696.

The crucial question is when did Zimmerman's agency terminate. If it terminated when the Baer-Gilbert agreement was executed in September, he thereafter was free to act for himself or for the vendee as long as he did not hinder, delay or interfere with the sale he had produced. *Owners Realty Co. v. Cook,* 123 Md. 1, 3-4; *Hardy v. Davis,* 223 Md. 229; *Sears v. Polan's,* 250 Md. 525, 530-533. If the agency continued, as Judge Levine found it did, Zimmerman could not during the term of the agency act for himself or for the vendee because of potential conflict between his duty to the vendor and his self-interest and because he must disclose to his principal, while he remains his agent, all facts and information which may be relevant or material in influencing the judgment or action of the principal in the matter. *Coppage v. Howard,* 127 Md. 512, 523; *Sellner v. Moore,* 251 Md. 391, 398-399; *Restatement (Second) of Agency* § 381.

In *Sellner* the broker sued for his commission on a sale that never was consummated, and got judgment. We reversed, holding that the broker's breach of duty to his principal, the seller, caused a forfeiture of his right to the commissions. The broker, at the purchaser's request, did not deposit the check for the down payment which under the contract he was to hold until settlement. The purchaser later brought the broker $2,000 in cash which, together with the check, later was returned. The broker did not tell the seller of any of these matters. Judge McWilliams for the Court said (pp. 398-400) :

"In common with most of the courts of this country we have held that a real estate 'broker is a fiduciary.' *Silverman v. Kogok*, 239 Md. 71, 76, 210 A. 2d 375 (1965). In his dealings with his employer he 'is bound to act *in good faith* and to make disclosures of matters that are material and might affect the action of his employer in the premises.' *Coppage v. Howard*, 127 Md. 512, 523, 96 A. 642 (1916). (Emphasis added.) It has been said that the seller 'in the employment of an agent to sell his property bargains for the disinterested skill, diligency and zeal of the agent for his own exclusive benefit.' * * * *Raisin v. Clark*, 41 Md. 158, 159 (1874). In *Raisin* the Court, speaking through Judge Miller, said also:

'It is a confidence necessarily reposed in the agent, that he will act with a sole regard to the interest of the principal as far as he lawfully may. * * * *Hence the law will not permit an agent of the vendor whilst that employment continues, to assume the essentially inconsistent and repugnant relation of agent for the purchaser.' Id.* at 159-60. (Emphasis added.)

That a broker may forfeit his right to compensation by misconduct, breach of duty or lack of

good faith is a proposition which is now well established. * * *

* * *

"We think Moore's [the broker's] misconduct in respect of the $5,000 'deposit' constitutes, in the circumstances of this case, a breach of duty and a lack of good faith sufficient to defeat his right to compensation and we so hold. Minchew's [the buyer's] financial responsibility was surely a matter of considerable importance to Sellner [the seller] since Minchew had committed himself to the payment of $168,750, in cash, within a year. Had Moore informed Sellner that Minchew was unable to come up with the $5,000 deposit Sellner might very well have concluded it would be much less likely he would have the $168,750 in cash, a year later. The possible consequences to Sellner are at once apparent and we must suppose he would have preferred to rescind the contract forthwith rather than to allow his property to be kept off the market for a year or longer. * * *"

The similarity of the facts in Sellner and of the broker's conduct there and the facts here and Zimmerman's conduct is at once apparent, and we think *Sellner* controls. Zimmerman is liable to Baer because he failed to disclose material facts and information about Mrs. Gilbert's financial condition and because he did not reveal the manipulations which resulted in his becoming the vendor of the farm to C. T. & S. at a profit that in all likelihood would have accrued to Baer but for Zimmerman's derelictions of duty.

Zimmerman strongly urges on us that his agency terminated when the Gilbert agreement was signed and that the fact the agreement was in essence an option did not extend his agency. Some thirty-three jurisdictions in some one hundred cases have held that generally a broker's right to commissions does not accrue when an option

agreement is executed but only when the option is exercised and a contract results. The cases are collected in the annotation to *Mercia v. Billings* (Vt.), 238 A. 2d 636 in 32 A.L.R.3rd 317, 327-330. This is the Maryland rule. *Kimberly v. Henderson,* 29 Md. 512, 515; *Coates v. Locust Point Co.,* 102 Md. 291; *Borowski v. Meyers,* 195 Md. 226, 232-234. Zimmerman's contract with Baer, made concurrently with the procuring of the Gilbert option, made the payment of the agreed commission dependent on the purchase being consummated. The rule is that an authority created to perform a specific act or accomplish a particular result is terminated when the purpose which called it into being is achieved. *Mechem, Agency* §§ 552b, 553 (2nd ed. 1914); *Restatement (Second) of Agency* § 106; *Hardy v. Davis, supra,* p. 233. Zimmerman was the agent of Baer to accomplish the consummated sale of Baer's property. To facilitate this he co-operated in the collection of the various further part payments. Not only was he Baer's agent as broker, he was Baer's attorney to procure rezoning of the farm with a resulting increase in value. The more valuable the farm the less likely would it be that Mrs. Gilbert would abandon her option rights and the more likely would it be that Zimmerman, while continuing to act as Baer's zoning agent, would accomplish the purpose of his agency as broker.

The law is against Zimmerman's contention that if it be found or assumed that he did breach his fiduciary duty, Baer waived or is estopped to claim any damages because Baer settled under the Gilbert agreement. There could be no estoppel because Zimmerman did not rely to his detriment on Baer's conduct. In Maryland, as generally, waiver is the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of that right; waiver may result from an express agreement or be inferred from circumstances. *Gould v. Transamerican Associates,* 224 Md. 285, 294-297. There is in the record nothing to show intentional relinquishment of any rights of Baer against Zimmerman except as to the $20,400 paid by Baer to Frederick De-

velopers. Settlement under a binding contract does not of itself warrant the inference of waiver. The cases collected in the annotation "Fraud—Waiver by Acts under Contract," 13 A.L.R.2d 807, 842-854, support the annotator's conclusion (p. 812) that:

> "The great majority of the cases support the rule that where the defrauded party has in part, or at least in substantial part, performed the contract at the time of discovering the fraud, he may go on with performance and also recover or have the appropriate allowance of damages. And the decisions are very strongly to the effect that there is no waiver by the mere going on with the contract if, when the fraud was discovered, a stopping or abandonment of performance was not reasonably practicable, or, to express a similar idea, if the defrauded party was then in a situation from which he was unable to recede without prejudice."

Maryland appears to be in accord. See *Sommers v. Dukes*, 208 Md. 386, 393, holding that:

> "Appellees had the choice of repudiating the contract or ratifying it and suing for damages to redress the injury inflicted by the false representation under it. *Telma v. Gingell*, 157 Md. 411, 146 A. 221. They have chosen the latter. Ratification of the contract, however, does not deprive the injured parties of redress for fraud practiced upon them in its inception. *Levin v. Hurwitz*, 148 Md. 249, 254, 129 A. 218. The question, therefore, is what damages, if any, should be awarded the appellees under the contract."

As Judge Levine pointed out, Baer accepted the first $10,000, the second $10,000 and the $15,000, while he was unaware that Zimmerman was an assignee of Mrs. Gilbert. When he became aware of the true facts, he was the

vendor in a contract obligating him to convey to a *bona fide* purchaser, and the probable object of a suit for specific performance if he did not settle and convey. No inference of waiver of damages for breach of Zimmerman's duty can be drawn under these circumstances. See *Doujotos v. Leventhal* (Mass.), 171 N. E. 445, in which in similar circumstances settlement on the advice of a lawyer was held not to justify the inference of waiver.

Zimmerman's suggestions that he was a joint venturer with Baer, that he had an interest in the Peters farm itself which he legitimately could protect by acting as he did, and that the execution of the undated agreement that the parties would submit to arbitration the question of Baer's liability to Zimmerman for the $30,600 of commissions remaining after the $20,400 was paid to Frederick Developers showed waiver, do not help him. In the posture in which the case was submitted for decision as a matter of law—largely by agreement of the parties — none of these contentions was properly submitted for decision or decided, and we will not discuss them. Maryland Rule 885. We add that on the record before us none has substance.

Judge Levine heard testimony on damages and gave judgment in favor of Baer for the $30,600 of commissions claimed and cross-sued for by Zimmerman and awarded him the profit of $135,000 Zimmerman made on the sale to C. T. & S. He gave judgment for Zimmerman as to the $20,400 received by Frederick Developers. We see no reason to disturb those judgments.

> *Decrees appealed from affirmed, costs to be paid by appellants.*