599 A.2d 820

**Jeanne G. SONNENBERG, et al.**

v.

**SECURITY MANAGEMENT CORPORATION.**

**No. 62, Sept. Term, 1991.**

Court of Appeals of Maryland.

Jan. 2, 1992.

Kathleen M. McDonald (Irwin, Kerr, Green, McDonald and Dexter, on brief), Baltimore, for appellant.

Daniel S. Katz (Mark D. Dopkin, Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

The issue presented here on the pleadings is whether a deceit action will lie where the plaintiffs, who allegedly were fraudulently induced to contract to purchase realty, closed on their transactions after discovery of the fraud. The defendant dresses its argument in the garb of reliance, contending that consummation of the contract with full knowledge of the facts precludes, as a matter of law, reliance on any misrepresentation. This Court rejected the same argument more than a century ago when it was garbed somewhat differently, and we again reject the argument for the reasons set forth below.

Appellants, who were plaintiffs in the trial court, are Jeanne G. Sonnenberg, Thomas Turnbow, Titus and Sharon Ledbetter (the Ledbetters), and Paul and Beth Weber. They respectively own four townhouse properties in Montgomery Meadows, a residential development in Gaithersburg, Maryland owned by the appellee, and defendant in the trial court, Security Management Corporation (Security).

The plaintiffs entered into contracts to purchase their respective properties between March 16 and May 18, 1988.

Security had purchased Montgomery Meadows in November 1979. In April 1980 Security granted a right of way to Colonial Pipeline Company (Colonial) over a portion of the Montgomery Meadows property for the construction of an underground oil and gas pipeline. As granted, the right of way was to run adjacent to, and on the far side of, a line that became the rear yard property line of the lots sold to the plaintiffs, but Colonial actually laid the pipeline on the near, or rear yard, side of that line.

When the plaintiffs contracted to purchase their properties, the encroachment of the pipeline was unknown to them and could not be observed by an inspection of the premises. Settlements on the plaintiffs' contracts of purchase were originally scheduled for the early fall of 1988, but were postponed by Security, which gave construction delays as the reason for postponing. The plaintiffs first learned of the pipeline encroachment from a letter dated October 25, 1988, written to each of them by counsel for Security. Security advised that Colonial had erroneously located its pipeline approximately four feet inside the rear boundary of the plaintiffs' lots, at a depth of approximately fourteen feet. Security brought suit on June 1, 1988, in the Circuit Court for Montgomery County to require Colonial to relocate the pipeline within the right of way, as granted, and Colonial counterclaimed to condemn a right of way where the pipeline was actually located. The October 25 letter referred to the possibility that the plaintiffs would be joined as defendants to that counterclaim.

Between October 25, 1988, and January 30, 1989, the plaintiffs closed on their home purchases. On January 30 Security's counsel again wrote, suggesting to the plaintiffs the possibility of being paid $500 per lot by Colonial for a fifteen foot easement. Security asked the plaintiffs to authorize that arrangement by February 3. None of the plaintiffs did so, and Colonial, on February 6, amended its

counterclaim in condemnation to join the plaintiffs.[1] Plaintiffs say that the easement sought to be condemned would constitute virtually the entirety of their rear yards.

The instant matter was filed by the plaintiffs against Security in the Circuit Court for Baltimore County. The initial complaint alleged deceit and a violation of the Maryland Consumer Protection Act, Md.Code (1975, 1990 Repl. Vol.), Title 13 of the Commercial Law Article (CL). Security's motion to dismiss for failure to state a claim was granted by Judge Leonard S. Jacobson who reasoned that plaintiffs' "going to settlement with the knowledge of the alleged fraud bars them from maintaining the present suit." Availing themselves of leave to do so, plaintiffs filed an amended complaint. It added a count alleging breach of contract, but the contract documents are not exhibits to, nor quoted in, the amended complaint. Security again moved to dismiss, and that motion was granted, after hearing, by Judge Joseph F. Murphy, Jr., substantially for the reason given by Judge Jacobson. The plaintiffs appealed to the Court of Special Appeals, and we granted the writ of certiorari on our own motion prior to consideration of the matter by the intermediate appellate court.

We shall address the sufficiency of the allegations of each of the three counts of the amended complaint. In doing so, however, we limit our consideration to the claimed deficiencies raised in the trial court by Security or by the trial judge. *See* Maryland Rule 8–131(a).

## I

■ In the claim for deceit plaintiffs allege that they were unaware of the pipeline encroachment until receipt of the October 25, 1988, letter, but that Security was aware of the encroachment, and of Colonial's threatened condemnation, when each of the plaintiffs signed their contracts to

---

1. That condemnation case was pending when the instant matter was argued before this Court.

purchase. Plaintiffs allege that Security did not inform any plaintiff of any of these facts, and that "[t]o the contrary, Security affirmatively represented to the Ledbetters that the pipeline did not encroach on the property they had contracted to buy."

Explaining why they closed on their contracts to purchase, the plaintiffs alleged:

"In reliance upon Security's announced schedule of settlements which, since spring of 1988, had consistently been set for early fall, plaintiffs made arrangements to move to their new homes, secured loan commitments, and terminated their current living situations, including selling their previous homes. When plaintiffs received the October 25, 1988, letter from Security's counsel they had no reasonable or practicable option but to go forward with the contracts, and could not have rescinded the contracts without severe prejudice."

Security contends that the amended complaint reveals the absence of an essential element of the tort of deceit, namely, reliance. Security submits that, because the plaintiffs knew the pipeline's location when they paid the balance of their purchase prices and took their deeds, they could not have been acting in reliance on a misrepresentation of no encroachment. Thus plaintiffs' alleged loss, measured by the difference between the value of the property as it was represented to be and its actual value, could not have been caused by misrepresentation by Security.

Although Security's argument resembles waiver, it is not true waiver for which Security contends. Security does not argue that the plaintiffs voluntarily relinquished or abandoned a known right to sue in deceit. The emphasis in Security's argument is on the fact that the plaintiffs discovered the alleged fraud before the contracts to purchase their lots were fully performed. Security recognizes that a deceit action will lie at the instance of a party who has been fraudulently induced to contract where that party has not discovered the fraud until the contract has been fully performed. Discovery of the fraud while the contract is still

executory, however, is said by Security to terminate the element of reliance, as a matter of law, so that any completion of performance by the defrauded party, and any alleged loss, cannot legally be attributed to the misrepresentation. As supporting its analysis of the law, Security points to *Savings Banks Retirement Sys. v. Clarke*, 258 Md. 501, 265 A.2d 921 (1970), and *Ryan v. Brady*, 34 Md.App. 41, 366 A.2d 745 (1976).

The plaintiffs, on the other hand, submit that the only *per se* legal consequence which flows from their completing performance of the contracts to purchase, after they had acquired knowledge of the encroachment, is that they are precluded from rescinding the contracts on the ground of fraud in the inducement. So long as they have not in fact waived their deceit claims, by knowingly and intentionally relinquishing or abandoning them, the plaintiffs say that they may fully perform the contracts, in lieu of rescinding them, and recover damages for the fraud.

The debate between the parties in this case is not new in the law. The two schools of thought are described in an Annotation, *Proceeding Under Executory Contract After Discovering Fraud as Waiver of Right to Recover Damages for the Fraud*, 13 A.L.R.2d 807 (1950). The editors summarize and comment in part, as follows:

"A rule which is very widely if not universally accepted runs to the effect that where a contract has been procured by fraud the defrauded party on discovery of the fraud is presented with a choice of rights and remedies in that he may either (1) rescind, or (2) 'affirm' and recover damages. The rule, however, as will be observed, is not specific as to whether or not it applies to situations in which the contract was still in part, or wholly, unexecuted when the fraud was discovered. . . .

"The great majority of the cases support the rule that where the defrauded party has in part, or at least in substantial part, performed the contract at the time of discovering the fraud, he may go on with performance and also recover or have the appropriate allowance of

damages. And the decisions are very strongly to the effect that there is no waiver by the mere going on with the contract if, when the fraud was discovered, a stopping or abandonment of performance was not reasonably practicable, or, to express a similar idea, if the defrauded party was then in a situation from which he was unable to recede without prejudice.

"On the other hand, a minority of cases, with more or less distinctness, and with some incidental variations in doctrine, may be regarded as supporting a general rule to the effect that the choice presented to the defrauded party is to rescind or to take the contract as it is without reservation, and that he cannot proceed under it and have damages if when the fraud was discovered the contract had been executed in part only, and most especially if little or nearly nothing had been done in performance, or if knowledge of the fraud was obtained in season to permit him to recede—but whether the latter specification means in season to recede without any loss or injury at all, or without serious or substantial injury is a matter of some uncertainty."

*Id.* at 811–13 (footnotes omitted).

To illustrate the division of authority outside of this State on the issue *compare Mertens v. Wolfeboro Nat'l Bank,* 119 N.H. 453, 402 A.2d 1335 (1979) (tort action allowed despite purchaser's closing on contract after discovery of misrepresentation), and *Collier v. Nolan,* 125 Vt. 82, 211 A.2d 265 (1965) (same) *with Mirenda v. Steinhardt,* 350 So.2d 499 (Fla.App.1977) (closing on contract after discovery of fraud is waiver when contract was "executory" at discovery), *cert. denied,* 360 So.2d 1250 (Fla.1978).

■■ Maryland law is in accord with the majority position described above. Persons who discover that they have been induced into a contract by fraud must decide, or the law will decide for them, whether unilaterally to rescind the contract or to ratify the contract and seek damages, either affirmatively or by recoupment. Our reports abound with cases in

which parties to contracts, after discovering fraudulent inducement, were denied unilateral rescission because their conduct, including delay, constituted an affirmance of the contract. *See Wolin v. Zenith Homes, Inc.,* 219 Md. 242, 146 A.2d 197, *cert. denied,* 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959); *Ortel v. Upper Ashburton Realty Co.,* 171 Md. 678, 190 A. 239 (1937); *Telma v. Gingell,* 157 Md. 411, 146 A. 221 (1929); *Levin v. Hurwitz,* 148 Md. 249, 129 A. 218 (1925); *Latrobe v. Dietrich,* 114 Md. 8, 78 A. 983 (1910); *Byrd v. Rautman,* 85 Md. 414, 36 A. 1099 (1897); *Foley v. Crow,* 37 Md. 51 (1872).

 Failure promptly to rescind does not preclude other remedies for fraud in the inducement. The defrauded party, in effect, must elect between inconsistent and mutually exclusive rights. The party is

"put to the choice of repudiating or ratifying the conveyance, although the transaction had been fully completed by conveyance and payment. If he adopted the first alternative he repudiated the conveyance and sought its rescission and a restoration of his situation before the contract; but if he chose the second, he ratified the grant but could obtain damages to redress the injury inflicted by the false and fraudulent representation."

*Telma v. Gingell,* 157 Md. at 413, 146 A. at 222. *See also Piper v. Jenkins,* 207 Md. 308, 113 A.2d 919 (1955) (tort action for fraudulent misrepresentation of boundaries brought after discovery following closing). Further, where the plaintiff purchased the rights to exploit an invention and discovered the fraud before the entire purchase price had been paid, the plaintiff could await suit by the seller for the balance and rely upon the fraud in defense. *Groff v. Hansel,* 33 Md. 161 (1870).

 Contrary to Security's contentions, where the allegedly defrauded party has affirmed the contract by conduct and then sued for damages, our cases have permitted a deceit action even though the fraud was discovered while the contract was executory. *Brager v. Friedenwald,* 128 Md. 8, 97 A. 515 (1916), is on point. Indeed, there this

Court rejected, over a dissent by two judges, the position which Security urges on us here. The dispute in *Brager* involved the $4 million (in 1910 dollars) estate of a decedent who had thirteen children. The plaintiff, one of the children, brought a deceit action against certain of her siblings, the essence of which was that her assignment to the defendants of her rights to participate in the estate had been obtained by fraudulent representations concerning the evidence available to set aside a will of the decedent under which the plaintiff took nothing. After the will was set aside in proceedings at which the plaintiff learned of the available evidence, the plaintiff nevertheless demanded and received the amount agreed to be paid to her for the assignment of her interest. In the deceit action the trial court granted a motion for judgment in favor of the defendants, but this Court concluded that there was sufficient evidence to permit jury consideration of the plaintiff's claim.

The dissenters in *Brager* would have affirmed because the plaintiff accepted payment with knowledge of the facts. They would have applied a rule stated in 20 *Cyclopedia of Law and Procedure* 92 as follows:

> " 'Although an action of deceit based upon fraud in the procurement of a contract proceeds upon the theory of affirmance of the contract by the defrauded party an important distinction exists with respect to acts done in affirmance of the contract after discovery of the fraud. If the defrauded party acquires knowledge of the fraud while the contract remains executory and thereafter does any acts in performance or affirmance of the contract or exacts performance from the other party, he thereby condones the fraud and waives his right of action. Under such circumstances a recovery would be largely if not entirely for self inflicted injuries and the maxim *volenti non fit injuria*, applies.' "

128 Md. at 40–41, 97 A. at 526.

The five judge majority in *Brager* held that the plaintiff could either have repudiated the settlement or "with full

knowledge of the facts," ratified it and recovered damages at law. *Id.* at 34, 97 A.2d at 524. The plaintiff had chosen the latter course. The majority then quoted from *Weaver v. Shriver,* 79 Md. 530, 543, 30 A. 189, 190 (1894), which quoted from *Groff v. Hansel,* 33 Md. at 166, which in turn had quoted from *Whitney v. Allaire,* 4 Denio 554, 557–58 (N.Y.Sup.Ct.1847), *aff'd in relevant part and aff'd in total by an equally divided court,* 1 N.Y. 305 (1848), as follows:

" ' "In all cases of fraud the vendee, who alone has the right of disaffirmance, may remain silent, and bring his action to recover damages for the fraud, or may rely on it, by way of defense, to the action of the vendor, although there has been a full acceptance by him, with knowledge of the defects of the property. An affirmance of the contract by the vendee, with such knowledge, merely extinguishes his right to rescind the sale. His other remedies remain unimpaired." The plaintiff had the undoubted right to bring his action in the form he has selected, and it was equally his right to waive his action for deceit, and avail of the alleged false representations as matter of defense in reduction of damages, or in bar of a recovery in the suit upon the promissory notes now pending. This we take to be well established law.' "

*Brager,* 128 Md. at 34, 97 A. at 524.

*Groff v. Hansel,* 33 Md. 161 (1870), had held that it was error to instruct that the allegedly defrauded party must have returned the consideration moving to that party within a reasonable time after discovery of the fraud. Phrased another way, rescission was not the exclusive relief.

The passage from *Groff v. Hansel,* quoted in *Brager,* was also the basis of decision in *McAleer v. Horsey,* 35 Md. 439 (1872), a deceit action brought by the purchaser of an interest in silver mines in Nevada, after the contract of purchase had been fully executed.

More recently the issue under consideration has arisen in this Court in a case where the fraud in the transaction was a breach of fiduciary duty by an agent representing the

seller of real estate. In *One Twenty Realty Co. v. Baer,* 260 Md. 400, 272 A.2d 377 (1971), the vendor discovered its agent's fraud prior to closing with the purchaser, but after the plaintiff vendor had accepted from the purchaser a deposit and two additional payments for extensions of the closing. The defendant contended that by proceeding to closing with notice of the facts the vendor waived, or was estopped to claim, any damages. This Court, speaking through Chief Judge Hammond, quoted the annotator's conclusion from 13 A.L.R.2d 807, 812, set forth above, and said that "Maryland appears to be in accord." 260 Md. at 409, 272 A.2d at 382. In support of that conclusion *Sommers v. Dukes,* 208 Md. 386, 118 A.2d 660 (1955), *later proceeding,* 214 Md. 351, 135 A.2d 419 (1957), was cited.

*Sommers* was the purchasers' action against the vendor under a land installment contract that had been in effect for some years, but which had not been fully performed by either party at the time of suit. The fraud consisted of the seller's misapplication of portions of the installment payments which should have been applied to fire insurance on the premises in an amount sufficient to cover the purchasers' interest as well as that of the seller. The suit, although brought in equity, did not seek rescission. We said that the purchasers had chosen to ratify the contract, that they were "suing for damages to redress the injury inflicted by the false representation," and that ratification "does not deprive the injured parties of redress for fraud practiced upon them in its inception." 208 Md. at 393, 118 A.2d at 663. We ordered an accounting pursuant to a formula designed to redress the injury. *See also Ellerin v. Fairfax Sav. Ass'n,* 78 Md.App. 92, 552 A.2d 918, *cert. denied,* 316 Md. 210, 557 A.2d 1336 (1989) (holding to be error jury instruction that would have disallowed both rescission and damages if jury found that borrower proceeded with loan agreements after discovery of fraud).

*Savings Banks Retirement Sys. v. Clarke,* 258 Md. 501, 265 A.2d 921 (1970), on which Security relies, does not stand for the proposition that discovery of contract-inducing fraud

while the contract is executory, followed by consummation of contractual performance, negates reliance for purposes of the tort of deceit as a matter of law. In that case the plaintiff had contracted to purchase realty free and clear of liens. A prior mortgage on the property was paid in full at closing. Unknown to the purchaser, and missed by the purchaser's title abstractor, was a second mortgage placed on the premises by the vendor after contracting to sell to the plaintiffs. The second mortgage was discovered after the contract of sale was fully performed. This Court affirmed dismissal on demurrer of the purchaser's deceit action that was predicated on misrepresentation at the closing by the vendor's failure to disclose the second mortgage. The rationale of *Clarke* is that the purchaser was relying, as a matter of law, exclusively on its title report, and not on representations of the vendor. We have no need fully to revisit *Clarke*'s reasoning in the instant matter because the two cases are factually distinguishable. The purchaser in *Clarke* had fully performed before discovery of the fraud, so the decision cannot stand for the proposition that further performance of the fraudulently induced contract after discovery of the fraud negates reliance.

Similar to *Clarke*, and also relied upon by Security, is *Ryan v. Brady*, 34 Md.App. 41, 366 A.2d 745 (1976), which affirmed a judgment entered for the defendant following a bench trial in an action in which damages were sought as alternative relief to rescission. A realtor, representing the seller, had innocently misrepresented the location of a side boundary for waterfront property prior to contract formation. The contract, however, was prepared by the purchaser's attorney who examined a recorded surveyor's plat which accurately located the boundary and which was incorporated by reference into the contract as the property's description. One ground for the affirmance was that "once the purchaser assumes the burden of an examination he cannot say that he was deceived to his injury where such examination discloses the correct information." 34 Md.App. at 55, 366 A.2d at 753.

By emphasizing the reliance element of the tort in its argument, Security seeks to equate with the independent examinations of public records in the *Clarke* and *Ryan* cases the notice which Security gave to the plaintiffs of the existence of the encroachment months after the contracts of purchase had been signed. W. Prosser, *The Law of Torts* § 108, at 714 (4th ed. 1971) describes reliance as follows:

> "The causal connection between the wrongful conduct and the resulting damage, essential throughout the law of torts, takes in cases of misrepresentation the form of inducement of the plaintiff to act, or to refrain from acting, to his detriment. The false representation must have played a material and substantial part in leading the plaintiff to adopt his particular course...." [2]

Here, based upon the way in which this case has been argued, we assume a misrepresentation of no encroachment or an actionable failure to disclose the encroachment. Security essentially seeks a ruling that, as a matter of law, its disclosure of the encroachment months after contract formation neutralized the operation of the antecedent misrepresentation so that the ultimate acquisition of property, and the claimed loss, cannot proximately result from the misrepresentation. The continued, post-disclosure effect of the misrepresentation is at least a question of fact at this stage of the case. Plaintiffs allege that in reliance on the misrepresentation they entered into the contracts to purchase (presumably accompanied by deposits toward the purchase prices), committed for loans, and, what is most significant, "terminated their current living situations, including selling their previous homes." Given legally sufficient evidence at trial to support those allegations, a trier of fact could conclude that the assumed misrepresentation continued to operate as a proximate cause of the claimed loss.

---

**2.** W. Keeton, *Prosser and Keeton on the Law of Torts* § 41, at 263 (5th ed. 1984) states that "[a]n essential element of the plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered."

The circuit court erred by dismissing the deceit count on the ground that it lacked a sufficient averment of reliance.

## II

 Closely related to the fraud count of plaintiffs' complaint is a count based upon the Maryland Consumer Protection Act (the Act). Under the Act "consumer" includes "an actual or prospective purchaser ... of ... consumer realty." CL § 13–101(c)(1). "Consumer realty" includes real property purchased "primarily for personal, household, family, or agricultural purposes." CL § 13–101(d). A "merchant" is "a person who directly or indirectly either offers or makes available to consumers any ... consumer realty." CL § 13–101(g). Section 13–301 sets forth a list of unfair or deceptive trade practices. They include:

"(3) Failure to state a material fact if the failure deceives or tends to deceive;"

and

"(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

"(i) The promotion or sale of any ... consumer realty...."

Section 13–303 prohibits engaging in any unfair or deceptive trade practice, including doing so in the sale or offer for sale of consumer realty. In addition to certain administrative actions provided by the Act, "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the Act]." CL § 13–408(a). A successful private action may be the basis for the court award of reasonable attorney's fees. CL § 13–408(b).

The plaintiffs' complaint alleges that the same facts underlying the deceit count constitute a violation of the Act. The circuit court dismissed the claim under the Act for the same reason that it dismissed the deceit claim. Applying a like consistency, that dismissal was error.

## III

■ The amended complaint also contains a count claiming that "Security breached its contractual obligation and warranty by conveying" the lots on which the pipeline encroached. The complaint alleges that in the contracts Security "promised and warranted to give plaintiffs good title, subject only to covenants, conditions, restrictions, easements and rights of way of record, or those easements which could be observed by an inspection of the property." · The facts alleged in the amended complaint constitute a breach of the alleged covenants so that, on its face, the contract count of the amended complaint states a cause of action. That count is not deficient if tested by a motion to dismiss for failure to state a claim upon which relief can be granted.

■ In its memorandum in support of its motion to dismiss the amended complaint Security quoted a portion from the contract which it used in selling townhouse properties in Montgomery Meadows. Those contracts were not exhibits to the amended complaint, and, when quoted, they were not otherwise part of the record. No contract is attached as an exhibit to Security's motion "to dismiss." [3] Plaintiffs, however, in their memorandum in opposition to Security's motion quoted the entire text of paragraph ten of the form contract. It reads:

"The property is sold subject to covenants, conditions, restrictions, easements and rights of way of record, and any other easements which may be observed by an inspection of the property, otherwise the deposit is to be returned and sale declared off at the option of the Purchaser, unless the defects are of such character that they may be remedied by legal action, but the Seller and Agent are hereby expressly released from all liability for damages

---

3. Maryland Rule 2–311(d) provides that "[a] motion ... that is based on facts not contained in the record or papers on file in the proceeding shall be supported by affidavit and accompanied by any papers on which it is based."

by reason of any defect in title. In case legal steps are necessary to perfect the title, such action, if Seller elects to undertake same, must be taken promptly by and at the Seller's expense. The time specified for full settlement by the Purchaser will be extended for the period necessary for such action."

We shall assume that the above-quoted contract provision was properly before the circuit court as an admission by a party opponent of the genuineness and completeness of paragraph ten, and we shall review the contract claim as if the dismissal were by summary judgment.

In the circuit court Security argued that the contract did not allow damages for its breach, while the plaintiffs argued that the contract was ambiguous.[4] The circuit court did not articulate a ground of decision on the contract claim that was separate from the ground of decision on the fraud claim.

Security's total release of damages argument goes too far. The plaintiffs have not released claims for breach of contract damages generally, but only under the circumstances of paragraph ten. For example, had the plaintiffs, on discovery of the title defect, elected to rescind and sought return of their deposits, under this contract the plaintiffs would not have been able to sue additionally for consequential damages for breach of contract.

On the other hand, where Security, as seller, elects to undertake to cure the title defect, it is perhaps less clear whether the release "from all liability for damages by reason of any defect in title" also applies. If we assume that the contract is to be interpreted in that manner, the record, nevertheless, does not reflect that circumstances covered by paragraph ten are presented. For example, we

---

**4.** Security did not contend, and the parties have not briefed and argued on the contract count the proposition, that all prior contractual obligations of Security respecting title were discharged by a voluntary acceptance of a defective performance, or by "merger." *Compare* 5A A. Corbin, *Corbin on Contracts* § 1245, at 582 (1964). We intimate no opinion on the applicability of that doctrine under the facts here.

do not know whether Security invoked its right to cure under the provisions of the above-quoted paragraph; whether the action in Montgomery County was and remains one to perfect title; whether Colonial's counterclaim for condemnation is opposed by Security because it would not perfect the plaintiffs' titles; whether Colonial must, and, if so, is able to, demonstrate a necessity for the taking of the area where the pipeline actually lies, despite the easement which Colonial has, but is not using; and, if Security's position is that a consumated condemnation by Colonial would substitute for Security's election to perfect title, whether Security nevertheless is obligated to defend, at Security's expense, against the claim by Colonial for condemnation of easements in the plaintiffs' property. In short, Security has not satisfied its burden of demonstrating that there is no genuine dispute of material fact and that it is entitled to judgment on the contract claim as a matter of law.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE APPELLEE, SECURITY MANAGEMENT CORPORATION.